**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

**DEBORAH AHO SMITH,**

      **Plaintiff,**

**v.**                                                    **Case No. 2:19-cv-00469-RAJ-LRL**

**SCHOOL BOARD OF THE CITY OF
VIRGINIA BEACH, VIRGINIA,**

      **Defendant.**

## FIRST AMENDED COMPLAINT

Deborah Aho Smith, by counsel, files this First Amended Complaint and demands judgment against the School Board of the City of Virginia Beach, Virginia on the following grounds and in the following amounts:

### INTRODUCTION

1.     This is an action brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), and the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"), for unlawful discrimination on the basis of race, White, and for breach of Plaintiff's employment contract with Defendant.

### PARTIES

2.     Deborah Aho Smith ("Plaintiff" or "Smith") is an individual residing in the City of Virginia Beach, Virginia.  The race of Smith is White.

3.     The School Board of the City Of Virginia Beach, Virginia ("Defendant" or "VBCPS") is a body corporate organized and existing pursuant to Section 22.1-71 of the Code of Virginia, as amended, operating, under the name "Virginia Beach City Public Schools," the

public school division established pursuant to Title 22.1 of the Code of Virginia for the City of Virginia Beach, Virginia.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question), 42 U.S.C. § 2000e-5 (Title VII of the Civil Rights Act of 1964), and 42 U.S.C. § 1981 (Civil Rights Act of 1866).

5.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial portion of the events or omissions giving rise to the claims asserted here occurred in the Eastern District of Virginia.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

6.      On or about March 18, 2019, Plaintiff filed charge of discrimination number 437-2019-00676 (**Exhibit 1**) ("EEOC Charge") with the United States Equal Employment Opportunity Commission ("EEOC"), and Defendant received a copy of it a short time thereafter.

7.      On or about June 13, 2019, the EEOC issued to Plaintiff a Notice of Right to Sue on the EEOC charge (**Exhibit 2**).

8.      This action was filed within 90 days of Plaintiff's receipt of the aforementioned Notice of Right to Sue.

9.      Plaintiff has satisfied all procedural prerequisites for the filing of this action.

## ALLEGATIONS COMMON TO ALL COUNTS

### Legal Framework Governing Defendant's Teachers

10.      At all relevant times Plaintiff was and is a "teacher" within the meaning of Title 22.1, Chapter 15, of the Virginia Code, Virginia Department of Education regulations, and Defendant's policies.

11.     As a teacher for Defendant, Smith was required to serve an initial probationary term of service with Defendant of three years, pursuant to Virginia Code section 22.1-303(A), under Virginia Department of Education regulations, and under Defendant's policies.

12.     Pursuant to Virginia Code section 22.1-303(A), Virginia Department of Education regulations, and Defendant's policies, once Smith completed her third teacher service year, Defendant had the option to extend Smith's probationary term of service for up to an additional two years.

13.     Defendant was required to expressly elect to exercise the option to extend Plaintiff's probationary period and, as described below, failed to do so.

14.     Once Smith completed her mandated probationary period (three years, or up to five years under an express election by Defendant), Smith was entitled to continuing contract status with Defendant pursuant to Virginia law, specifically Virginia Code section 22.1-304(B), which provides, "teachers employed after completing the probationary period shall be entitled to continuing contracts during good behavior and competent service," under Virginia Department of Education regulations, and under Defendant's policies.

15.     At all relevant times, a term of Defendant's employment of teachers including but not limited to Smith, which is mandated by Virginia Code section 22.1-304(A) ("written notice of nonrenewal of the probationary contract must be given by the school board on or before June 15 of each year") and Virginia Department of Education regulations, and which is mandated by Defendant's Policy 4-57.1 (titled "Licensed Personnel: Contracts") (**Exhibit 10**), was that "written notice of non-renewal of the contract must be given by the School Board on or before June 15."

16.     At all relevant times, a term of Defendant's employment of teachers including but not limited to Smith, which is mandated by Virginia Code section 22.1-304(A), and which therefore is incorporated as a matter of law into Defendant's Policy 4-57.1 and otherwise binding upon Defendant, was that "if no such notice is given a teacher by June 15, the teacher shall be entitled to a contract for the ensuing year in accordance with local salary stipulations including increments."

### Smith's Years of Service

17.     Beginning on September 15, 2013, Smith first was employed by Defendant as an English teacher at Bayside Middle School (without a written contract) for the 2013-2014 school year ("2013-2014 Teaching Term").

18.     Smith served her first teaching service year with Defendant through her 2013-2014 Teaching Term.

19.     Smith next was employed by Defendant as an English teacher for the 2014-2015 school year, first at Bayside Middle School (without a written contract) and then assigned to First Colonial High School under a written contract with Defendant dated January 30, 2015 which ran from January 26, 2015 through June 19, 2015, and as an instructor under a written contract which ran from June 16, 2015 through July 7, 2015, followed by a summer school term from June 29, 2015 through July 7, 2015 ("2014-2015 Teaching Term").

20.     Smith served her second teaching service year with Defendant through her 2014-2015 Teaching Term.

21.     Smith was next employed by Defendant as an English teacher at Bayside Middle School under a written contract (undated) which ran from September 1, 2015 through January 3, 2016, followed by employment at Landstown High School under a written contract dated

4

December 23, 2015 which continued through the spring semester of 2016, and followed by summer school employment as a teacher at First Colonial High School from June 27, 2016 through August 18, 2016 ("2015-2016 Teaching Term").

22.    Smith served her third teaching service year with Defendant through her 2015-2016 Teaching Term.

23.    Defendant did not expressly elect to extend Smith's probationary period following completion of her third teaching service year, and therefore Smith was entitled to continuing contract status beginning with her next teaching service year (2016-2017).

24.    Smith was next employed by Defendant continued as an English teacher at Kempsville High School under a written contract dated August 29, 2016, which ran from August 26, 2016 through the end of the 2016-2017 school year ("2016-2017 Teaching Term").

25.    Smith served her fourth teaching service year with Defendant through her 2016-2017 Teaching Term.

26.    Defendant did not expressly elect to extend Smith's probationary period following completion of her 2016-2017 Teaching Term, and therefore Smith was entitled to continuing contract status during (if not before) her next 2016-2017 Teaching Term (2017-2018).

27.    Smith was next employed by Defendant continued as an English teacher at Kempsville High School under a written contract dated June 12, 2017, which ran from August 24, 2016 through the end of the 2017-2018 school year ("2017-2018 Teaching Term").

28.    Smith was entitled to continuing contract status during her 2017-2018 Teaching Term.

29.    Defendant did not give Smith notice of non-renewal of her teaching contract by June 15, 2018, as was required by Virginia Code section 22.1-304(A), Virginia Department of

Education regulations, and Defendant's Policy 4-57.1, for non-renewal of Smith's employment contract.

30.    Because Defendant did not give Smith notice of non-renewal of her teaching contract by June 15, 2018, Smith was "entitled to a contract for the ensuing year," i.e., the 2018-2019 school year, "in accordance with local salary stipulations including increments," pursuant to Virginia Code section 22.1-304(A).

31.    Smith was entitled to continuing contract status upon issuance of the 2018-2019 school year contract to which Smith was entitled (if not sooner) because prior to issuance of that contract she would have completed at least five years of teaching service for Defendant.

32.    Defendant failed and refused to issue a written renewed employment contract to Plaintiff for the 2018-2019 school year.

### Events Preceding Dismissal

33.    Throughout Smith's employment with Defendant, Smith met or exceeded the legitimate job performance expectations of Defendant.

34.    At the time of Smith's dismissal described below, Smith was fifty eight years of age.

35.    Smith reasonably expected to work as an English teacher for Defendant, and but for her dismissal described below would have worked as an English teacher for Defendant, until retirement at age sixty five.

36.    English teachers at Kempsville High School sometime have incorporated the graphic novel "American Born Chinese" by Gene Luen Yang into the curriculum of 10th grade English classes, and at all relevant times the use of American Born Chinese as part of the 10th grade English curriculum was accepted by Defendant to teach students that diversity is desirable

6

and that stereotypes and discrimination, including stereotypes and discrimination based of race, are not.

37.     During the 2018 Spring semester, Ms. Tara Jones ("**Jones**") was an English teacher at Kempsville High School, and was the team leader of the team of English teachers at Kempsville High School of which Smith was a member.

38.     During the 2018 Spring semester, Smith and Jones used American Born Chinese in their 10th grade English classes.

39.     During the 2018 Spring semester, Jones downloaded from the internet a lesson plan for use with American Born Chinese, provided it to Smith, and both Jones and Smith used that lesson plan in teaching American Born Chinese to their 10th grade English classes in May 2018.

40.     In order for lessons using American Born Chinese to be effective, it is necessary for students to understand the meaning of stereotypes; therefore, Kempsville High School teachers using American Born Chinese in the 10th grade English curriculum begin with a discussion with students about stereotypes, to ensure students understand the concept and to teach the concept to students who do not, and learning activities to facilitate that understanding. That discussion and those activities are referred to herein as the "**Stereotype Lesson**."

41.     There are a number of ways Kempsville High School English Teachers have taught the Stereotype Lesson.

42.     One way Kempsville High School English Teachers have taught the Stereotype Lesson utilizes a "gallery walk."  The teacher and students first identify various racial, ethnic, and social groups which sometimes have been the subject of stereotypes, including, for example, Blacks, Asians, jocks, cheerleaders, and "courtyard kids."  The name of each group is then

written at the top of a large poster (sometime a large Post-It note is used), and the posters are placed on tables in the classroom.  The students then divide into groups, with the same number of groups as posters, and each group gathers at a poster and writes applicable stereotypes on the poster.  After a short time the groups circulate to the next poster, and write applicable stereotypes on it.  That continues until each group has had a turn at each poster.  The class is then seated, and the teacher leads a discussion with the students about why the stereotypes written on the posters are wrong, and why stereotypes are wrong generally.  This method was used by Kempsville High School English teacher Stephanie Watson ("**Watson**"), whose race is Black, in her 2018 Spring semester 10th grade English classes.

43.     Another way Kempsville High School English teachers have taught the Stereotype Lesson is to use pieces of paper instead of posters.  Under this method, each group of students take a turn writing stereotypes on each paper until all the groups have done so, and the stereotypes are then discussed.  This method differs from the gallery walk only in that it uses pieces of paper instead of posters.  This method was used by Jones in her 2018 Spring semester 10th grade English classes.

44.     Both of these ways of teaching the Stereotype Lesson, as well as possibly other ways, have been accepted by Defendant.

45.     Smith conducted the Stereotype Lesson in one of her two 10th grade English classes on May 15, 2018, and conducted the Stereotype Lesson in the other of her two 10th grade English classes on May 16, 2018.

46.     Smith conducted the Stereotype Lesson using the gallery walk method.

47.     The lesson with a discussion to identify stereotype groups, and the stereotype groups selected were Blacks, Latinos, Asians, Courtyard Kids, and Jocks.

48.     The name of each stereotype group was written on a large Post-It note, and each Post-It Note was placed on the wall of the classroom.

49.     One of the Post-It notes was for stereotypes regarding Blacks, and the word "Blacks" was written at the top of it.

50.     The student groups then took turns writing stereotypes on each Post-It note.

51.     The students who wrote on the "Blacks" Post-It note were primarily Black, and they wrote on it profusely.

52.     Many of the stereotypes the Black students wrote on the "Blacks" Post-It note were words and phrases that are unacceptable for use outside of an academic discussion of racial stereotypes, and they included some racial slurs.

53.     The Black students who wrote the offensive items on the "Blacks" Post-It note appeared to find their writings humorous or amusing.

54.     None of the students who were present during the Stereotype Lesson were offended by it.

55.     A discussion with the students ensued, guided by Plaintiff, concerning stereotypes, which focusing on the fact the stereotypes were inaccurate and inappropriate.

56.     Each student present during each of the Stereotype Lessons enjoyed the lesson and benefitted from it.

57.     One of the students ("**Student 1**") present during the Stereotype Lesson, whose is Black, took a photograph of the "Blacks" Post-It note using a cell phone camera and forwarded it to one or more of his friends and family, apparently believing they would find the photo amusing or interesting, but not because he found it offensive or because he believed any of the recipients would find it offensive.

58.     The photo ended up being received by another Kempsville High School student ("**Student 2**"), whose race is Black, and who was not present during either Stereotype Lesson.

59.     Student 2 did not know and did not care about the context or reason for the Post-It, but was angered by the words written on it.

60.     On Friday, May 18, 2018 at 11:25 AM, Student 2 posted the photo to her Facebook page, which she maintained (and continues to maintain) in public status (meaning anyone can view it), with the message:  "Ok so I've been hesitant to post this but I need y'all to share share share this racist stuff at my school needs to stop and I'm going to share until it stops" and a link to the Facebook page for WAVY TV 10.

61.     Student 2's mother ("**Student 2 Mother**"), whose race is Black, was angered by the photo, and on Thursday, May 17, 2018, Student 2 Mother complained to staff of Defendant. Defendant's staff informed William Harris ("**Harris**"), who at that time was the Principal of Kempsville High School, of the complaint, and on or about the morning of Friday, May 18, 2018, Harris spoke to Student 2 Mother by phone about the photo.

62.     On Friday, May 18, 2018 at approximately noon, Harris informed Smith that there had been complaints about the poster and the Stereotype Lesson.  Harris spoke to Smith then and at 1:00 PM to obtain information about the poster and the lesson.  Smith provided Harris with the lesson plan, and informed him that she had thrown the post into the trash when the lesson was over.  Smith informed Harris that she taught the Stereotype Lesson and used the posters the same way as teacher Stephanie Watson, whose race is Black, to which Harris replied, "*Well, she can.*" The meaning of Harris' statement in reference to Watson was that it was acceptable for Watson to teach the Stereotype Lesson and used the posters in that manner because Watson is Black, but the same was not true for Smith because Smith is White.

10

63.     On Friday, May 18, 2018 at 11:31 AM, Student 2 added to the text of the Facebook post: "this is Kempsville High School please share I'm tired of coming to school and having racist things said to me."

64.     Student 2 also disseminated the Facebook post using Facebook Messenger.

65.     Several people contacted WAVY, and on Friday, May 18, 2018, WAVY reporter Brett Hall published an article online (http://www.wavy.com/meet-the-team/brett-hall/1062682967) with the title "Parents outraged after racial slurs, stereotypes are included in VB classroom assignment" and a copy of the photo with many of the words redacted.

66.     The WAVY article stated:  "A spokesperson for the school system said administration was made aware of the situation just Friday and is still investigating the matter. The spokesperson went on to say the investigation includes what disciplinary action needs to be taken."  The statement by the spokesperson that the investigation includes "*what* disciplinary action needs to be taken" rather that "*whether* disciplinary action needs to be taken" demonstrated that Defendant pre-judged Plaintiff and had decided, without any investigation, that  Smith was guilty of an offense and would be punished.  In fact, at that time, Defendant had already decided to fire Smith solely because of the complaints about the photo.

67.     Upon learning of the article, Defendant, and in particular Harris, set about conducting a perfunctory and sham investigation and preparing a written report solely for the purpose of justifying firing Smith.

68.     At some time believed to be on or after May 21, 2018, Harris prepared a document titled "**Investigation Notes**," which purports to state his findings during his investigation into the complaints about the Stereotype Lesson, but which says nothing about anyone being offended or targeted.

11

69.     On Monday, May 21, 2018 at noon, Harris met with Kempsville High School English teachers Tara Jones, Claudia Ockert, Zachary Wolff, Charlotte Jenkins, and Ashley Faher, Department Liason Celia Golden, Kempsville High School Assist Principal (now Principal) Melissa George, and a Mr. Timlin.  The purported reason for the meeting was for Harris to discuss and learn about the Stereotype Lesson given by Smith and the related curriculum.  The actual reason for the meeting was to build a sham investigatory record to support dismissal of Smith.  The pretextual nature of the meeting is evident from the fact that Harris knew from May 18, 2018 conversations with Smith that Stephanie Watson taught the same Stereotype Lesson in the same manner as Smith, yet Harris did not include Watson in the meeting.

70.     On Monday, May 21, 2018, Harris spoke with Student 1, according to his Investigation Notes.  He also made no contemporaneous written record of that conversation. As with Student 2, he did not have Student 1 fill out and sign a "Kempsville High School Student Statement" form then, and instead waited until June 4, 2018 to do so.  Neither the Investigation Notes about the conversation with Student 1 nor the June 4, 2018 Kempsville High School Student Statement" form written by Student 1 say anything about anyone being offended or targeted.

71.     On Monday, May 21, 2018, Harris also spoke with Student 2.  He made no contemporaneous written record of the conversation.  He did not have Student 2 fill out and sign a "Kempsville High School Student Statement" form then, and instead waited until June 4, 2018 to do so.

72.     On Monday, May 21, 2018, Harris spoke with a third student ("**Student 3**") according to his Investigation Notes.  He had Student 3 fill out and sign a "Kempsville High

School Student Statement" form, but it is not dated and therefore it is impossible to determine when it was written.  Neither the Investigation Notes about the conversation with Student 3 nor the Kempsville High School Student Statement" form written by Student 3 say anything about anyone being offended or targeted.

73.  On Wednesday, May 23, 2018, Defendant placed Plaintiff on administrative leave, and delivered to Plaintiff a written notice (**Exhibit 3**) informing Plaintiff that she was being placed on leave "pending an investigation into allegations made against you for creating a learning environment where a group of students felt they were being targeted based on their race."  No student in either class, however, felt he or she was being targeted based on their race, nor did Defendant have any evidence that they did.  The statement that "students felt they were being targeted based on their race" was a deliberate misrepresentation made for the purpose of building a record to support dismissal of Smith.

74.  On May 24, 2018, Harris spoke with a student ("**Student 4**"), according to his Investigation Notes.  He had Student 4 fill out and sign a "Kempsville High School Student Statement" form that day.  Neither the Investigation Notes about the conversation with Student 4 nor the May 24, 2018 Kempsville High School Student Statement" form written by JC say anything about anyone being offended or targeted.

75.  On May 24, 2018, Harris spoke with a student ("**Student 5**"), according to his Investigation Notes.  He had Student 5 fill out and sign a "Kempsville High School Student Statement" form on May 25, 2018.  Neither the Investigation Notes about the conversation with Student 5 nor the May 25, 2018 Kempsville High School Student Statement" form written by Student 5 say anything about anyone being offended or targeted.

76.     Harris' Investigation Notes contain the following statement: "Has Stefanie Watson taught this lesson?  If so, in English 9 or 10? Yes, last year with English 10, but she did not allow ethnic groups on the charts.  She did have an informal conversation about ethnic groups with her students and reported that it went well."  That statement was false; Watson allowed ethnic groups to be written on her Post-It Notes, just as Smith did, and Watson said nothing to Harris supporting this misrepresentation by Harris.  Harris himself contradicts it elsewhere in his Investigation Notes, where he states, "Ms. Watson may have used the lesson plan. We are still investigating this claim by Ms. Smith."

77.     On June 4, 2019, Harris had Student 2 fill out and sign a "Kempsville High School Student Statement," although his interview of Student 2 occurred on May 21, 2019.  The June 4, 2018 "Kempsville High School Student Statement" form written by Student 2 says nothing about anyone being offended or targeted.

78.     The preceding describes the entire "investigation" conducted by Defendant, and demonstrated that the "investigation" was entirely pretextual and intended only to create documentary support for Smith's dismissal.

79.     On June 4, 2018, Harris recommended to VBCPS Superintendent Aaron Spence ("**Spence**") that Defendant terminate Smith's employment, and delivered to Smith a letter of that date (**Exhibit 4**).  The letter contains numerous untrue statements, including statements that "numerous students complained about the discriminatory nature of the posts," that "stereotypes ... is not part of the tenth-grade curriculum," that "the lesson should have been shaped by you to insure an appropriate learning experience" but was not, that "there was a group of students in your class who were understandably offended by this lesson," that responses made by students during the Stereotype Lesson were "at the expense of other students,"  that Smith had

14

demonstrated a "highly defensive, argumentative attitude," that she violated School Board policy 4-2, "Employee Conduct," and that she "adversely affected our students and the School Division."

80.     By letter dated June 8, 2018 (**Exhibit 5**), Spence notified Smith that he accepted the recommendation of Harris and that Spence intended to recommend to the School Board of the City of Virginia Beach ("**School Board**") that it terminate Smith's employment.  The letter contains numerous untrue statements, including statements that Smith "failed to demonstrate proper judgment and professionalism;" that Smith "failed to follow the School Division's curriculum," that Smith "violated School Board policies," that "numerous students complained about the discriminatory nature of the posts," that the Stereotype Lesson "was not part of the 10th grade curriculum," that Smith "failed to protect students from discriminatory behavior," that Smith displayed a "highly defensive, argumentative attitude," and that  Smith violated Defendant's Policy 4-56 (titled "Duties and Responsibilities of Professional Teaching Staff ") (**Exhibit 6**) and Defendant's Policy 4-2 (titled "Employee Conduct") (**Exhibit 7**).

81.     Smith filed a grievance challenging Spence's recommendation.

82.     A hearing on Smith's grievance was conducted on June 26, 2018, at which Defendant was represented by an attorney and Smith attempted to represent herself *pro se*.

83.     Smith had no experience in grievance proceedings, and as a result her representation of herself at the June 26, 2018 hearing was utterly ineffective.  For example, Smith failed to introduce any evidence that she conducted the Stereotype Lesson in a manner virtually identical to the Stereotype Lesson conducted by English teacher Stephanie Watson, and Defendant, for obvious reasons, failed to inform the hearing officer of that.  Likewise, Smith failed to call as witnesses any of her students who had been present in her class during the

Stereotype Lesson, to confirm that no one in the class was offended by the lesson.  Smith, in fact, called no witnesses of her own, and floundered when attempting to cross examine the witnesses called by Defendant.

84.     On July 10, 2018, the hearing officer issued his written decision on the grievance, in which he found there was sufficient evidence to support Spence's recommendation, while observing that "it is reasonable to assume the Grievant could have made a stronger case had she had an attorney" and "whether the outcome would have been different we will not know."

85.     On August 14, 2018, the School Board adopted a resolution (**Exhibit 8**) terminating Smith's employment effective as of that date, stating, "that on August 14, 2018, the School Board considered the Findings of Facts and Conclusions and Recommendations of the Hearing Officer, the transcripts of the June 26, 2018 hearing and the exhibits and, based upon such consideration, it is; resolved that the School Board adopts the Findings of Facts and Conclusions and Recommendations of the Hearing Officer that the Grievant be dismissed from employment."

86.     School Board Regulation 4-3.1 (**Exhibit 9**) is the grievance procedure used by Defendant for teachers, and it states, in pertinent part: "Following a hearing by a hearing officer, the School Board may make its decision upon the record or recording of the hearing conducted before the hearing officer, or the School Board may elect to conduct a further hearing to receive additional evidence by giving written notice of the time and place to the teacher and the Superintendent within ten (10) business days after the School Board receives the record or recording of the initial hearing."  School Board of the City of Virginia Beach Regulation 4-3.1, Part II, Section 3.1, subsection A.7.

87.     The August 14, 2018 School Board resolution states that the School Board considered the transcript of the June 26, 2018 hearing in reaching its decision and, if it did in fact read that transcript, it was obvious to the School Board that the vast disparity in abilities between Smith and legal counsel representing the School Board made the grievance hearing an inherently unreliable means of determining whether Smith should be dismissed.

88.     Had the School Board desired to make an appropriate decision concerning Smith's employment, it would have elected to conduct a further hearing to receive additional evidence and to make additional inquiries, in accordance with its grievance procedure; the School Board, however, did not do so, because Defendant's intent was to terminate Smith's employment regardless of the evidence.

89.     Defendant did not issue a renewal contract to Smith for the 2018-2019 school year.

90.     Because Smith was White, Defendant applied its policies to Smith, disciplined Smith, discharged Smith, and failed to renew Smith's employment contract unfairly and inconsistently with its treatment of similarly situated Black employees.

91.     If Smith were Black, Defendant would not have dismissed her and refused to continue to employ her under the circumstances presented here, or if the persons complaining about the poster had not been Black, Defendant would not have terminated her employment under the circumstances presented here.  Defendant terminated Plaintiff's employment because she was a White teacher who was the subject of complaints by a Black student and Black parents who were not in class at the time of the lesson, and who either did not know or did not care that Smith used the poster as an effective and appropriate tool to teach her students that stereotypes and discrimination are wrong.

92.     The actions of Defendant described herein, including but not limited to its dismissal of Smith and its refusal to continue to employed her, occurred because Defendant's administration and Defendant's school board consider appeasing Black individuals and the Black community more important that protecting the rights of White employees including but not limited to Smith.

**COUNT 1:**
**RACE DISCRIMINATION IN VIOLATION OF TITLE VII**

93.     The allegations set forth elsewhere in this Complaint are incorporated by reference into this Count.

94.     Defendant, by the actions described herein, discriminated against Smith on the basis of her race, White, in violation of Title VII.

95.     As a direct and proximate result thereof, Smith has suffered and will continue to suffer loss of income and employee benefits, loss of employment opportunities and earning capacity, severe and irreparable damage to her personal and professional reputation, and severe and extreme mental anguish and emotional distress including but not limited to anger, outrage, frustration, embarrassment, humiliation, depression, and anxiety, accompanied by symptoms including but not necessarily limited to crying, agitation, palpitation, fatigue, sleeplessness, nightmares, impaired  concentration, and loss of enjoyment of life, and has incurred and will incur expenses for the care and treatment in connection therewith, and pecuniary losses including but not limited to job and related expenses.

WHEREFORE Plaintiff demands judgment against Defendant and as relief seeks the following:

a.     A declaratory judgment that Defendant violated Title VII by its actions described herein;

b.      In injunction prohibiting Defendant from discrimination against Plaintiff and similarly situated White employees on the basis of race;

c.      Reinstatement with full restoration of seniority and status which would have been attained by Plaintiff in the absence of unlawful discrimination;

d.      Back pay in an amount to be determined at trial;

e.      Front pay in an amount to be determined at trial, in the event reinstatement is not ordered;

f.      Compensatory damages in amount of $500,000 or such other amount as may be proven by the evidence at trial;

g.      Pecuniary damages in an amount to be determined at trial;

h.      In the event compensatory and pecuniary damages are not awarded, then nominal damages;

i.      Pre-judgment interest;

j.      Post-judgment interest;

k.      Plaintiff's costs and expenses incurred herein including but not limited to expert witness fees and reasonable attorney's fees; and

l.      Such other and further legal and equitable relief as the interests of justice may require.

Plaintiff demands TRIAL BY JURY on this Count.

### COUNT 2:
### BREACH OF CONTRACT BY
### DISMISSAL WITHOUT GOOD AND JUST CAUSE
### REQUIRED UNDER VIRGINIA CODE § 22.1-307

96.     The allegations set forth elsewhere in this Complaint are incorporated by reference into this Count.

97.     The Code of Virginia contains certain provisions which, by law, are incorporated into Defendant's employment contracts with teachers it employs including including but not limited to Smith, and which therefore are terms in the contractual relationship between Defendant and teachers it employs including including but not limited to Smith.

98.     One such term and condition of employment is created by Section 22.1-307 of the Code of Virginia, as amended, which states teachers may be dismissed only for "incompetency, immorality, noncompliance with school laws and regulations, disability as shown by competent medical evidence when in compliance with federal law, conviction of a felony or a crime of moral turpitude, or other good and just cause."

99.     Defendant dismissed Smith in the absence of any of the grounds for dismissal required by Section 22.1-307 of the Code of Virginia, and thereby breached its contract with Smith by dismissing Smith.

100.     As a direct result of those breaches of contract, Smith has sustained and will continue to sustain damages, including but not necessarily limited to wages and benefits she would have received during the remainder of her employment contract in effect at the time of the termination, wages and benefits she reasonable expected to receive under future renewal employment contracts until retirement, and consequential damages.

WHEREFORE Plaintiff demands judgment against Defendant and as relief seeks the following:

a.     Damages in the amount of $375,000 or such other amount as may be proven by the evidence at trial.

b.     Pre-judgment interest;

c.     Post-judgment interest;

20

d.  Plaintiff's costs and expenses incurred herein; and

e.  Such other and further legal and equitable relief as the interests of justice may require.

Plaintiff demands TRIAL BY JURY on this Count.

### COUNT 3:
### BREACH OF CONTRACT BY
### DISMISSAL WITHOUT GOOD CAUSE REQUIRED UNDER POLICY 4-2

101.  The allegations set forth elsewhere in this Complaint are incorporated by reference into this Count.

102.  Defendant maintains written policies and regulations which are incorporated into Defendant's employment contracts with teachers it employs including including but not limited to Smith and which are terms and conditions of the contractual relationship between Defendant and teachers it employs including including but not limited to Smith.

103.  One such contractual term and condition, which is created by defendant's Policy 4-2 (**Exhibit 7**), is that disciplinary action "shall be taken only for good reason."

104.  Defendant dismissed Smith without "good reason" within the meaning of the Policy 4-2, and thereby breached its employment contract with Smith by dismissing Smith.

105.  As a direct result of said breach of contract, Smith has sustained and will continue to sustain damages, including but not necessarily limited to wages and benefits she would have received during the remainder of her employment contract in effect at the time of the termination, wages and benefits she reasonable expected to receive under future renewal employment contracts until retirement, and consequential damages.

WHEREFORE Plaintiff demands judgment against Defendant and as relief seeks the following:

21

     a.     Damages in the amount of $375,000 or such other amount as may be proven by the evidence at trial.

     b.     Pre-judgment interest;

     c.     Post-judgment interest;

     d.     Plaintiff's costs and expenses incurred herein; and

     e.     Such other and further legal and equitable relief as the interests of justice may require.

Plaintiff demands TRIAL BY JURY on this Count.

**COUNT 4:**
**BREACH OF CONTRACT BY**
**INCONSISTENT AND UNFAIR APPLICATION OF DISCIPLINARY ACTION**
**REQUIRED UNDER POLICY 4-2**

106.    The allegations set forth elsewhere in this Complaint are incorporated by reference into this Count.

107.    A term and condition of the contractual relationship between Defendant and teachers it employs including including but not limited to Smith, which is created by defendant's Policy 4-2 (**Exhibit 7**), is that "disciplinary action shall be consistently and fairly applied."

108.    Defendant did not apply it its rules consistently and fairly in dismissing Smith, and thereby breached its contract with Smith.

109.    As a direct result of said breach of contract, Smith has sustained and will continue to sustain damages, including but not necessarily limited to wages and benefits she would have received during the remainder of her employment contract in effect at the time of the termination, wages and benefits she reasonable expected to receive under future renewal employment contracts until retirement, and consequential damages.

WHEREFORE Plaintiff demands judgment against Defendant and as relief seeks the following:

a.      Damages in the amount of $375,000 or such other amount as may be proven by the evidence at trial.

b.      Pre-judgment interest;

c.      Post-judgment interest;

d.      Plaintiff's costs and expenses incurred herein; and

e.      Such other and further legal and equitable relief as the interests of justice may require.

Plaintiff demands TRIAL BY JURY on this Count.

### COUNT 5:
### BREACH OF CONTRACT BY
### FAILURE TO ISSUE CONTRACT FOR 2018-2019 SCHOOL YEAR

110.    The allegations set forth elsewhere in this Complaint are incorporated by reference into this Count.

111.    As stated above, at all relevant times a term of Defendant's employment of teachers including but not limited to Smith, which is mandated by Virginia Code section 22.1-304(A) ("written notice of nonrenewal of the probationary contract must be given by the school board on or before June 15 of each year") and Virginia Department of Education regulations, and which is mandated by Defendant's Policy 4-57.1 (titled "Licensed Personnel: Contracts") (**Exhibit 10**), was that "written notice of non-renewal of the contract must be given by the School Board on or before June 15."

112.    As stated above, at all relevant times a term of Defendant's employment of teachers including but not limited to Smith, which is mandated by Virginia Code section 22.1-

304(A), and which therefore is incorporated as a matter of law into Defendant's Policy 4-57.1 and otherwise binding upon Defendant, was that "if no such notice is given a teacher by June 15, the teacher shall be entitled to a contract for the ensuing year in accordance with local salary stipulations including increments."

113.    As stated above, because Defendant did not give Smith notice of non-renewal of her teaching contract by June 15, 2018, Smith was "entitled to a contract for the ensuing year," i.e., the 2018-2019 school year, "in accordance with local salary stipulations including increments," pursuant to Virginia Code section 22.1-304(A).

114.    Defendant did not issue a renewal contract to Smith for the the 2018-2019 school year, and thereby breached its contract with Smith.

115.    As a direct result of said breach of contract, Smith has sustained and will continue to sustain damages, including but not necessarily limited to wages and benefits she would have received during the remainder of her employment contract in effect at the time of the termination, wages and benefits she reasonable expected to receive under future renewal employment contracts until retirement, and consequential damages.

WHEREFORE Plaintiff demands judgment against Defendant and as relief seeks the following:

a.    Damages in the amount of $375,000 or such other amount as may be proven by the evidence at trial.

b.    Pre-judgment interest;

c.    Post-judgment interest;

d.    Plaintiff's costs and expenses incurred herein; and

e.      Such other and further legal and equitable relief as the interests of justice may

require.

Plaintiff demands TRIAL BY JURY on this Count.

**DEBORAH AHO SMITH**

By:   _Ray Hogge_

Raymond L. Hogge, Jr.
VSB No. 29445
Hogge Law
500 E. Plume Street, Suite 800
Norfolk, VA 23510
Tel: (757) 961-5400
Fax: (757) 962-5979
rayhogge@virginialaborlaw.com
Counsel for Deborah Aho Smith

25

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 437-2019-00676 |

| Virginia Council On Human Rights | and EEOC |
|---|---|
| State or local Agency, if any | |

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Deborah A. Smith | (757) 793-6974 | 7/28/1960 |

| Street Address | City, State and ZIP Code |
|---|---|
| 3853 Ocean Tides Drive | Virginia Beach, VA 23455 |

*MAR 18 2019 RECEIVED*

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| School Board of City of Virginia Beach (dba Virginia Beach City Public Schools | +500 | (757) 263-1016 |

| Street Address | City, State and ZIP Code |
|---|---|
| 2512 George Mason Dr. | Virginia Beach, VA 23456 |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | *RECEIVED* | |

| Street Address | City, State and ZIP Code |
|---|---|
| | *MAR 18* |

| DISCRIMINATION BASED ON (Check appropriate box(es).) | DATE(S) DISCRIMINATION TOOK PLACE |  |
|---|---|---|
| | Earliest | Latest |
| ☒ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN | 5/23/2018 | 8/14/2018 |
| ☒ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ GENETIC INFORMATION | | |
| ☐ OTHER (Specify) | ☐ CONTINUING ACTION | |

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I.  I was employed by the VBCPS as a teacher from 2013 through August 14, 2018. On May 15, 2018, I was under a contract of employment with VBCPS as a teacher at Kempsville High School. My race is White.

II.  On May 15, 2018 I taught a class at Kempsville High School which included a discussion about stereotypes. As part of the class, students wrote stereotypes about certain groups of people, including Blacks, Asian and Hispanics, on large post-it notes in the classroom, and a discussion ensued to teach them that such stereotypes are wrong. The activity was appropriate and beneficial to all the students, and none of the students were offended by it. Black students wrote a number of offensive stereotypes and words under the "Black" group. Certain individuals published a photo of the "Black" post-it note to social media and to the news medial, to falsely and maliciously portray me as creating a racially hostile work environment for students in the class. Another Kempsville High School teacher, Stephanie Watson, whose race is Black, taught a comparable class using comparable methods of instruction, and Kempsville High School Principal William Harris told me that VBCPS would have taken no action against Watson had comparable photos been taken of her class materials. (Continued on p. 2.)

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| March 18, 2019      *Deborah Aho Smith* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |
| Date          Charging Party Signature | |

**EXHIBIT**
**1**

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA <br> ☒ EEOC | 437-2019-00676 |

| Virginia Council On Human Rights | and EEOC |
|---|---|
| State or local Agency, if any | |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

On or about June 4, 2018, Harris recommended to Superintendent Aaron C. Spence that I be dismissed. On or about June 8, 2018, Spence recommended to the VBCPS School Board that I be dismissed. I complained to VBCPS that firing me for the photos would have constituted discrimination against me on the basis of my race. On or about August 14, 2018, VBCPS dismissed me. VBCPS dismissed me without good cause, because of the photo and because I opposed discrimination against me on the basis of my race.

III. I believe I have been discriminated against on the basis of my race, White, and because I opposed discrimination against me on the basis of my race, in violation of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.

RECEIVED
MAR 18 2019

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. <br> SIGNATURE OF COMPLAINANT |
| March 18, 2019      *Deborah A. Smith* <br> Date          Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

EEOC Form 161 (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Deborah A. Smith<br>3853 Ocean Tides Drive<br>Virginia Beach, VA 23455 | From: | Norfolk Local Office<br>200 Granby Street<br>Suite 739<br>Norfolk, VA 23510 |
|---|---|---|---|

RECEIVED

JUN 1 7 2019

By _____ Telephone No.

|   | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) |
|---|---|

| EEOC Charge No. | EEOC Representative | |
|---|---|---|
| 437-2019-00676 | Alexander Perez,<br>Investigator | (757) 441-3475 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

| | |
|---|---|
| [ ] | The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC. |
| [ ] | Your allegations did not involve a disability as defined by the Americans With Disabilities Act. |
| [ ] | The Respondent employs less than the required number of employees or is not otherwise covered by the statutes. |
| [ ] | Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge |
| [X] | The EEOC issues the following determination:  Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge. |
| [ ] | The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge. |
| [ ] | Other (briefly state) |

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

Enclosures(s)

**Norberto Rosa-Ramos,**
**Local Office Director**

6/13/19
(Date Mailed)

cc:
| Joey Phillips<br>EEO, HR Director<br>VIRGINIA BEACH CITY PUBLIC SCHOOLS<br>2512 George Mason Dr.<br>Virginia Beach, VA 23456 | Raymond L. Hogge, Jr., Esq<br>HOGGE LAW<br>500 E. Plume Street<br>Suite 800<br>Norfolk, VA 23510 |
|---|---|

**EXHIBIT**

2

tabbies®

Enclosures(s)

cc:    **Matthew Simmons**
       **2512 George Mason Dr.**
       **Virginia Beach, VA 23456**

Enclosure with EEOC
Form 161 (11/16)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS   --   Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Courts often require that a copy of your charge must be attached to the complaint you file in court. If so, you should remove your birth date from the charge. Some courts will not accept your complaint where the charge includes a date of birth. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS   --   Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice and within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION   --   Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE   --   All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months** of this Notice. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA  ☒ EEOC | 437-2019-00676 |

| Virginia Council On Human Rights | | and EEOC |
|---|---|---|
| *State or local Agency, if any* | | |

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| Deborah A. Smith | (757) 793-6974 | 7/26/1960 |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| 3853 Ocean Tides Drive | Virginia Beach, VA 23455 | MAR 18 2019 RECEIVED |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| School Board of City of Virginia Beach (dba Virginia Beach City Public Schools | +500 | (757) 263-1016 |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| 2512 George Mason Dr. | Virginia Beach, VA 23456 | |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| | RECEIVED MAR 18 | |

| Street Address | City, State and ZIP Code | |
|---|---|---|

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☒ RACE   ☐ COLOR   ☐ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN
☒ RETALIATION   ☐ AGE   ☐ DISABILITY   ☐ GENETIC INFORMATION
☐ OTHER *(Specify)*

| DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|
| Earliest | Latest |
| 5/23/2018 | 8/14/2018 |
| ☐ CONTINUING ACTION | |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I.  I was employed by the VBCPS as a teacher from 2013 through August 14, 2018. On May 15, 2018, I was under a contract of employment with VBCPS as a teacher at Kempsville High School. My race is White.

II.  On May 15, 2018 I taught a class at Kempsville High School which included a discussion about stereotypes. As part of the class, students wrote stereotypes about certain groups of people, including Blacks, Asian and Hispanics, on large post-it notes in the classroom, and a discussion ensued to teach them that such stereotypes are wrong. The activity was appropriate and beneficial to all the students, and none of the students were offended by it. Black students wrote a number of offensive stereotypes and words under the "Black" group. Certain individuals published a photo of the "Black" post-it note to social media and to the news medial, to falsely and maliciously portray me as creating a racially hostile work environment for students in the class. Another Kempsville High School teacher, Stephanie Watson, whose race is Black, taught a comparable class using comparable methods of instruction, and Kempsville High School Principal William Harris told me that VBCPS would have taken no action against Watson had comparable photos been taken of her class materials. (Continued on p. 2.)

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| March 18, 2019         *Deborah Ako Smith* <br> Date            Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other Information before completing this form. | ☐ FEPA<br>☒ EEOC | 437-2019-00676 |

**Virginia Council On Human Rights** and EEOC

*State or local Agency, if any*

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

On or about June 4, 2018, Harris recommended to Superintendent Aaron C. Spence that I be dismissed. On or about June 8, 2018, Spence recommended to the VBCPS School Board that I be dismissed. I complained to VBCPS that firing me for the photos would have constituted discrimination against me on the basis of my race. On or about August 14, 2018, VBCPS dismissed me. VBCPS dismissed me without good cause, because of the photo and because I opposed discrimination against me on the basis of my race.

III. I believe I have been discriminated against on the basis of my race, White, and because I opposed discrimination against me on the basis of my race, in violation of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.



RECEIVED
MAR 18 '19

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| March 18, 2019     *Deborah A. Smith*<br>Date          Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |



**VIRGINIA BEACH CITY PUBLIC SCHOOLS**
CHARTING THE COURSE

**CONFIDENTIAL**

**Delivered in Person**

May 23, 2018

Ms. Deborah Smith
Employee I.D. No. 48463
3853 Ocean Tides Dr.
Virginia Beach, VA 23455

Re:    Confirmation of Your Employment Status -- Administrative Leave with Pay

Dear Ms. Smith:

The purpose of this letter is to confirm the status of your employment with Virginia Beach City Public Schools (the Division). I am placing you on administrative leave with pay, effective today, May 23, 2018. Being placed on administrative leave with pay will not have an effect on your benefits. I am removing you from your duties as a teacher pending an investigation into allegations made against you for creating a learning environment where a group of students felt they were targeted based on their race. Specifically, the lesson as delivered in your classroom resulted in the posting of racially insensitive slurs. As the teacher, you did not modify the lesson plan when you observed that student responses were inappropriate. Even after students used racial slurs in one class, you delivered the same lesson without modification the next day.

The Office of Employee Relations will be conducting an investigation in this matter. Dr. Joey H. Phillips, Employee Relations Specialist, has been assigned to your case. You will remain on administrative leave with pay until (1) the investigation is concluded, and (2) a decision is made regarding your employment.

As part of the terms and conditions of being on administrative leave with pay:

- You may not enter onto school property or have any contact with staff, students, or parents about this matter without discussing it with me first. I can be reached at 263-1046. If you try to contact me and are unsuccessful, you may call Dr. Phillips at 263-1045 instead.

- You must be available for meetings and/or phone calls with members of the Department of Human Resources and/or other Division administrators. You must be available to attend a meeting within one hour of being contacted. If you have a cell phone, please provide the number to Dr. Phillips so we may reach you in a hurry if necessary.

- You must cooperate with any further investigation or inquiry that is needed in connection with this case or any new issues that develop.

- Please turn in your badge and keys to Dr. Phillips today. Also, please return any other property in your possession or under your control that belongs to (1) Kempsville High School, or (2) the Division.

**Department of Human Resources**
**2512 George Mason Drive | P.O. Box 6038 | Virginia Beach, Virginia 23456-0038**
(757) 263-1133 Fax (757) 263-1082                                                    www.vbschools.com



EXHIBIT
3

Smith, Deborah
May 23, 2018
Page 2 of 2

While you are on administrative leave, the Division reserves the right to assign you to an alternate assignment. Failure to report to the alternate assignment or comply with the above requirements may result in disciplinary action, up to and including dismissal.

I have enclosed an original and a copy of this letter. Please ask Dr. Phillips if you have any questions about its contents. Then sign and date the copy and return it to Dr. Phillips. The purpose of your signature is only to confirm receipt.

Sincerely,

Edie L. Rogan, SPHR, SHRM-SCP
Director Employee Relations
Department of Human Resources

Encl. (copy of the letter to be signed and returned)

ELR/jhp

cc:     John A. Mirra, Chief Human Resources Officer, Department of Human Resources (w/o encl.)
        William W. Harris, Principal, Kempsville High School (w/o encl.)
        Joey H. Phillips, Ph.D., Employee Relations Specialist, Department of Human Resources (w/o encl.)
        Kamala H. Lannetti, Deputy City Attorney, Office of the City Attorney (w/o encl.)

## ACKNOWLEDGMENT OF RECEIPT

*The purpose of my signature is to verify that I received this letter. My signature is not an indication that I agree with the letter's contents.*

_____          May 23, 2018
Signature of Deborah Smith                 Date

Department of Human Resources
2512 George Mason Drive | P.O. Box 6038 | Virginia Beach, Virginia 23456-0038
(757) 263-1133 Fax (757) 263-1082

www.vbschools.com

A002
Smith2018.11.13D-000224



# KEMPSVILLE HIGH SCHOOL

5194 Chief Trail • Virginia Beach, VA  23464 • P: 757-648-5450 • F: 757-474-7919
Committed to equipping students to be independent, responsible, academically proficient, technically and
globally literate critical and creative thinkers.

Dr. Donna G. Elliott
*Assistant Principal*

Mr. D. Bradley Barbour
*Assistant Principal*

Mr. William W. Harris
*Principal*

Mrs. Melissa S. George
*Assistant Principal*

Ms. Meghan A. Timlin
*Academy Coordinator*

*CONFIDENTIAL*

*Hand Delivered*

June 4, 2018

Ms. Deborah Smith
Employee #: 48463
3853 Ocean Tides Dr.
Virginia Beach, Virginia 23455

Re:  Recommendation for Dismissal

Dear Ms. Smith:

By copy of this letter to Dr. Aaron C. Spence, Superintendent, and John A. Mirra, Chief Human Resources
Officer, I am recommending that you be dismissed from your employment with the School Division. The
reason for this recommendation is that a lesson in your classroom on May 17, 2018, resulted in the posting of
racially insensitive slurs on posters that could be seen by all students. Numerous students complained about
the discriminatory nature of the posts. As the teacher, you did not modify the lesson plan when you observed
that student responses were inappropriate. Even after students used racial slurs in one class, you delivered
the same lesson without modification the next day.

I met with you on May 21, 2018 to discuss this incident. Also present were Assistant Principal, Melissa George,
and Employee Relations specialist, Dr. Joey Phillips.  The book used for this lesson was "American Born
Chinese." Your lesson devoted most of the block to stereotypes, which is not part of the tenth-grade
curriculum. As part of the lesson, students suggested groups of people at Kempsville High School. The groups
used were Black, Latino, Courtyard Kids, SCA and Jocks.  These group names were written on five large "Post
It" papers.  Your students were next allowed to divide themselves into five groups, and performed a gallery-
walk. The students were given the choice of which group they wanted to start with.  African American
students picked the "Black" group.  Each group started at a different one of the large "Post It" papers where
they were instructed to write adjectives to describe the stereotypes of their selected group. They then moved
to the next group's paper where they wrote adjectives for that group. The category "Black" was used on both
days.  The large "post-it" paper used for this assignment was used in two different blocks. The second block
used the reverse side of the paper.  Afterwards, you threw the papers away.

Your response to students at the close of your planned activity indicates you were
aware that the responses were inappropriate. In your written statement you reported,
"The one thing that bothers me more than the ugliness on these post-its, is that you
were laughing as you were writing." Dr. Phillips asked you if there were differences in





EXHIBIT

4

Deborah Smith
May 30, 2018
Page 2 of 3

the responses between the classes you said that both blocks wrote objectionable responses and neither could be called worse than the other.

What concerns me is that after you saw the "ugliness" of the responses in the first class on May 16, 2018, you did not modify the lesson for the second class on May 17, 2018. When asked specifically if you made any changes to the learning plan after seeing the responses on the first day you said you had not. As a teacher, I would have expected you to stop the lesson at that time, address the issue and redirect your students. When asked why you did not modify the learning plan you said you wanted to give the students voice. My expectation would be that you give students voice within the parameters of the lesson. The lesson should have been shaped by you to insure an appropriate learning experience. That did not happen, not for the first class and not for the second.

There was a group of students in your class who were understandably offended by this lesson. Instead of writing adjectives to describe negative stereotypes used against African Americans student responses digressed into the use of offensive racial slurs. As the teacher, you failed to protect these students when you did not step in and address issues when you became aware of them. In two separate blocks, the lesson as you executed it, led to inappropriate, "ugly" responses from students at the expense of other students. Students who were offended by the comments took pictures of the posters and circulated the pictures on social media and to the local media outlets, which caused considerable concern in the community and reflected poorly on the School Division.

Unfortunately, this incident was not the first time that I have been concerned about your lack of judgement.

- On May 1, 2018, you received a verbal warning for not following protocol as set forth by administrative directive. That warning came when you failed to respond to administrators in a timely manner concerning a student's grades and attendance.
- You resigned your position overseeing drama on May 10, 2018. I asked you to resign when you spent approximately $1,100 of school funds without prior approval for Thespian Honor Society expenses.
- You wrongly complained directly to the varsity girls' basketball coach via e-mail about his allowing players to kneel during the national anthem.
- You missed multiple required teacher evaluation deadlines requiring a reminder e-mail on June 10, 2017.
- You submitted incomplete common assessment data, which required a reminder email on December 5, 2017.
- On October 10, 2016, you mishandled cash receipts from the Homecoming Bonfire.

In general, your highly defensive, argumentative attitude and lack of judgment this year has caused me to question your ability to reflect inwardly and make meaningful change.

My concern with your instruction has been ongoing. It was noted in your summative evaluation dated June 15, 2017, that in standard two, *Instructional Planning*, and standard four, *Assessment of and for Student Learning*, you were marked as "Developing." Specifically, there were concerns with the inclusion of daily formative assessments aligned with the learning plan. In your interim evaluation dated March 8, 2018, you were marked as "Developing" in standard two, *Instructional Planning*, and standard three, *Instructional Delivery*.

Deborah Smith
May 30, 2018
Page 3 of 3

My concerns with these issues are ongoing as they continue to affect our students. Your actions violate School Board policy 4-2 *Employee Conduct*, which states in part, "The School Board expects that staff will set examples for students that will serve students well in their own conduct and behavior and which will contribute toward an appropriate instructional atmosphere. Therefore, as a condition of employment, all employees are to perform their duties and comply with School Board Policy, School Administration Regulations, and state and federal law and regulations. Employees shall demonstrate the necessary skills, maturity, ability in dealing with others, and understanding of their job functions. Safety, courtesy and respect for diversity are expected of all employees. At no time should any employee's conduct jeopardize a student's right to be educated..." Your behavior does not reflect a commitment to these values and has adversely affected our students and the School Division. Therefore, to protect the best interests of our students, this school and the School Division, I am recommending that you be dismissed.

The next step in the process is that Dr. Spence and Mr. Mirra will review the case and make a decision regarding my recommendation, after which Dr. Spence will prepare a letter to inform you of his decision. If he decides to recommend to the School Board that you be dismissed, you will have ten (10) days from receipt of his letter to file a grievance. Information regarding the grievance procedure is located online, and you may contact Dr. Joey Phillips at 263-1045.

Sincerely

William Harris
Principal

Encl. (copy of letter to be signed and dated)

cc:   Aaron C. Spence, Ed.D, Superintendent
      John A. Mirra, Chief Human Resources Officer, Department of Human Resources
      Daniel Keever, Senior Executive Director High Schools, Department of School Leadership
      Edie Rogan, Director of Employee Relations, Department of Human Resource
      LyVonnia Revels, Human Resources Specialist, Department of Human Resources
      Joey H. Phillips, Ph.D, Employee Relations Specialist, Department of Human Resources

**CONFIRMATION OF RECEIPT**

The purpose of my signature is to confirm receipt of this letter. My signature is not an indication that I agree with the contents of the letter.

_____          June 4, 2018
Employee Signature                 Date



# VIRGINIA BEACH CITY PUBLIC SCHOOLS
## CHARTING THE COURSE

**Aaron C. Spence, Ed.D.**
Superintendent

<u>**CONFIDENTIAL**</u>

**Delivered in Person**

June 8, 2018

Ms. Deborah Smith
Employee I.D. No. 48463
3853 Ocean Tides Drive
Virginia Beach, Virginia 23455

Re:     **Recommendation for Dismissal**
        **Your Position:  Probationary Teacher, Kempsville High School**

Dear Ms. Smith:

The purpose of this letter is to inform you of my intention, in accordance with Virginia State Code §§ 22.1-307 and 22.1-309, to recommend to the School Board of the City of Virginia Beach that you be dismissed from employment with Virginia Beach City Public Schools (the School Division).  I am making this recommendation because you have failed to demonstrate proper judgment and professionalism; failed to follow the School Division's curriculum; violated School Board policies; and for other good and just cause.  The remainder of this letter provides the reasons for this recommendation.

On May 17, 2018, you presented a lesson in your class that involved stereotypes.  This lesson was not part of the 10th grade English curriculum.  You allowed your students to divide themselves into groups; this resulted in African-American students choosing the "Black" group.  Other choices included "Latino," "Courtyard Kids," "SCA," "Jocks," and, in one session, "Asians."  Using large posters, the students were instructed to write adjectives to describe each group.  However, instead of writing adjectives to describe stereotypes, the students' responses digressed into the use of offensive racial slurs.  These racial slurs were displayed on the large posters in the classroom, which could be seen by all students.  Numerous students complained about the discriminatory nature of the posts.  Although you agreed that the posts were "ugly" and offensive, you did not modify the lesson after the first block of instruction and presented the lesson to a second block of students the next day.  In fact, those students used the same poster paper that had the offensive racial slurs from the first day, and again the lesson deviated into producing racial insults.

A teacher using proper judgment would have stopped the lesson as soon as students started to stray, addressed the issue, and redirected the students.  You not only failed to do this, you chose to deliver the same lesson without modification the next day.  Consequently, you failed to protect students from discriminatory behavior.  Your conduct also caused considerable concern in the community and reflected poorly on the school and the School Division as a whole as pictures of the posters circulated on social media and appeared in local media outlets.

William Harris, Principal of Kempsville High School, also noted additional concerns regarding your judgment in his recommendation for dismissal:

2512 George Mason Drive  |  P.O. Box 6038  |  Virginia Beach, Virginia  23456-0038

www.vbs


EXHIBIT
5

Smith, Deborah
June 8, 2018
Page 2 of 3

- On May 1, 2018, you received a verbal warning for not following protocol as set forth by administrative directive. That warning came when you failed to respond to administrators in a timely manner concerning a student's grades and attendance.
- You were asked to resign your position overseeing drama after you spent approximately $1,100.00 of school funds without prior approval for Thespian Honor Society expenses.
- You wrongly complained directly to the varsity girls' basketball coach via e-mail about his allowing players to kneel during the national anthem. This was a matter that should have come to administration instead.
- You missed multiple evaluation deadlines requiring a reminder e-mail on June 10, 2017.
- You submitted incomplete common assessment data, which required a reminder e-mail on December 5, 2017.
- On October 10, 2016, you mishandled cash receipts from the Homecoming Bonfire.

Mr. Harris shared that your performance during your probationary status has been an issue as well. Your Summative Evaluation, dated June 15, 2017, had *Performance Standard 2: Instructional Planning* and *Performance Standard 4: Assessment of and for Student Learning* marked as "Developing/Needs Improvement." Specifically, there were concerns with the inclusion of daily formative assessments aligned with the learning plan. In your Interim Evaluation, dated March 8, 2018, you were marked as "Developing/Needs Improvement" in *Performance Standard 2: Instructional Planning* and *Performance Standard 3, Instructional Delivery*.

Lastly and of considerable concern, Mr. Harris has reported that you have displayed a "highly defensive, argumentative attitude" throughout this year. When Joey Phillips, Employee Relations Specialist, Melissa George, Assistant Principal, and Mr. Harris presented you with Mr. Harris' recommendation for dismissal, you argued that you had done nothing wrong and that the recommendation for dismissal was "based on fabrication" and was "racist." Furthermore, Dr. Phillips reported that you addressed Ms. George, and said, "I am sorry to put you through this, but not him [Mr. Harris]." You also stated you were considering taking this to the media. It is difficult to comprehend your reasoning when the facts are irrefutable, and disheartening that you do not take any accountability for your actions.

In order for the School Division to be a world-class organization, it must employ world-class employees, especially teachers. You have violated several School Board policies and regulations, including, but not limited to School Board Policy 4-56, *Roles of Professional Teaching Staff/Conditions for Employment*. In particular, Policy 4-56 states, in part, "The professional teaching staff shall be responsible for providing instruction that is educationally sound in an atmosphere of mutual respect and courtesy, which is conducive to learning and in which all students are expected to achieve the objectives of the Standards of Learning for the appropriate grade level or discipline…"

You have violated Policy 4-2, *Employee Conduct*, which states, in part, "…The School Board expects that staff will set examples for students that will serve students well in their own conduct and behavior and which will contribute toward an appropriate instructional atmosphere… Safety, courtesy and respect for diversity are expected of all employees. At no time should any employee's conduct jeopardize a student's right to be educated. Therefore, as a condition of employment, all employees are to perform their duties and comply with School Board Policy, School Administration Regulations, and state and federal law and regulations."

Pursuant to School Board Policy 4-3 and School Board Regulation 4-3.1, you may grieve my recommendation by completing the enclosed *Request for Hearing* form and filing it with the Office of Employee Relations within ten business days from the date of this letter.

Smith, Deborah
June 8, 2018
Page 3 of 3

The School Board has elected that such a grievance will first be heard by a hearing officer, who will be appointed by the School Board as provided by law. However, at its sole discretion, in certain cases the School Board may choose to hear a specific grievance rather than directing the grievance to a hearing officer. Please note that any grievance may be subject to issues concerning grievability and/or timeliness. If the Office of Employee Relations does not receive the appropriate written notice that you are grieving within the ten-day timeframe, your right to grieve will be waived, and the School Board will act on my recommendation. Please sign and date the enclosed copy of this letter to confirm receipt and return it to Edie L. Rogan, Director of Employee Relations.

Sincerely,

Aaron C. Spence, Ed.D.
Superintendent

Enclosures

cc:     John A. Mirra
        Chief Human Resources Officer, Department of Human Resources (w/o encls.)

        Rashard J. Wright
        Chief Schools Officer, Department of School Leadership (w/o encls.)

        Daniel F. Keever
        Senior Executive Director of High Schools, Department of School Leadership (w/o encls.)

        Edie L. Rogan
        Director of Employee Relations, Department of Human Resources (w/o encls.)

        LyVonnia C. Revels
        Human Resources Specialist, Department of Human Resources (w/o encls.)

        Joey Phillips, Ph.D.
        Employee Relations Specialist, Department of Human Resources (w/o encls.)

        William W. Harris
        Principal, Kempsville High School (w/o encls.)

        Kamala H. Lannetti
        Deputy City Attorney, Office of the City Attorney (w/o encls.)

## CONFIRMATION OF RECEIPT

The purpose of my signature is to confirm receipt of this letter. My signature is not an indication that I agree with the contents of the letter.

_____               _____
      Signature of Deborah Smith                          Date



# VIRGINIA BEACH CITY PUBLIC SCHOOLS
## CHARTING THE COURSE

*Department of Human Resources*

## NOTICE OF PROPOSED DISMISSAL

Case Number: __520-06-08-18__ (Human Resources Use Only)

| | |
|---|---|
| Name of Teacher: **Deborah Smith** | Date: **June 8, 2018** |
| School/Department of Assignment: **Kempsville High School** | |

The Division Superintendent will recommend to the School Board that you be dismissed from your position as:

**English Teacher**
(position)

At your request, reasons for this recommendation will be provided to you in writing or in a personal interview.

You have ten (10) business days from receipt of this form to request, in writing, a hearing before the School Board or, at the option of the School Board, a hearing before a Hearing Officer. A copy of the *Request for Hearing* Form is attached.

Division Superintendent's Signature

Aaron C. Spence, Ed.D.
Division Superintendent's Name (printed)

June 8, 2018
Date

Pers 8-79
Revised 3/1997
Revised 12/2014
Revised 4/2016

A011
Smith2018.11.13D-000233

# Policies and Regulations

School Board of the City of Virginia Beach
Policy 4-56

### PERSONNEL

### Licensed Personnel: Role of Professional Teaching Staff/Conditions of Employment

A. **Role of Professional Teaching Staff**

The professional teaching staff shall be responsible for providing instruction that is educationally sound in an atmosphere of mutual respect and courtesy, which is conducive to learning and in which all students are expected to achieve the objectives of the Standards of Learning for the appropriate grade level or discipline. The staff shall:

1. Serve as leadership models of effective oral and written communication with special attention to the correct use of language and spelling;

2. Strive to strengthen the basic skills of students in all subjects;

3. Establish teaching objectives to achieve the following:

   a. Identify what students are expected to learn; and

   b. Inform students of the achievement expected and keep them engaged in learning tasks;

4. Provide for individual differences of students through the use of differentiated instruction, varied materials, and activities suited to their interests and abilities;

5. Assess the progress of students and report promptly and constructively to them and their parents; and

6. Teach the School Board approved curriculum.

B. **General Qualifications**

1. Skills. The person employed must have sufficient language, mechanical, computational, and organizational skills to perform his/her basic tasks without close supervision.

2. Maturity. The person employed must have reasonable emotional balance and self-control.

3. Facility in Dealing with Others. The person employed must enjoy working with other people and must have a natural ease in dealing with students, supervisors, coordinators, directors, staff and members of the public with whom he/she will be in contact.


EXHIBIT
6

4.  Understanding of Job Function. The person employed must have or be able to develop very readily a clear understanding of the function of his/her job in operating the school division.

C.  **Licensure/Employment Qualifications**

All teaching personnel shall meet the licensure requirements of the Virginia Board of Education for the position to which they are assigned. Current employees of the Virginia Beach City Public Schools shall be required to provide proof of baccalaureate degree, major, concentration, or graduate degrees, and field of discipline. Educational transcripts may be required as evidence of eligibility for Virginia Licensure.

D.  **Criminal History Record Information**

The Superintendent shall require that all employees, whether full-time or part-time, permanent or temporary, submit to fingerprinting and provide personal descriptive information to obtain criminal history record information for the purpose of screening individuals who accept employment in the School Division.

The Superintendent shall forward the personal descriptive information through the Central Criminal Records Exchange to the Federal Bureau of Investigation for the purpose of obtaining criminal history record information regarding such employee.

The Superintendent shall forward the personal descriptive information through the Central Criminal Records Exchange to the Federal Bureau of Investigation for the purpose of obtaining criminal history record information regarding such employee.

The Superintendent shall also require that each employee, whether full-time or part-time, permanent or temporary, certify that he or she has not been: (1) convicted of a felony, a crime of moral turpitude, or any offense involving the sexual molestation, physical or sexual abuse or rape; and (2) has not been the subject of a founded case of child abuse and neglect.

Employees may be permitted to work pending the results of the Federal Bureau of Investigation background investigation and Department of Social Services search of the registry of founded complaints if the following conditions are met:

1.  The School Division has successfully completed a state and local police background check for the individual; and

2.  The School Division has successfully completed a check of the sex offender website and the sex offender and crimes against minors registry for the individual; and

3.  The School Division requires the individual to serve in the physical presence of an employee who has successfully completed the Federal Bureau of Investigation background investigation and the Department of Social Services search of the registry of founded complaints.

E.  **Probationary Period Required/Mentor Teacher**

Although contracts for probationary instructional personnel are issued for one (1) year only, the first three (3) years of a person's employment shall be considered a

F028

Smith20190318B-000230

probationary period for new personnel. The School Board authorizes the Superintendent or designee to extend a probationary period up to five years total for an individual employee. All probationary employees, except those with prior successful teaching experience, shall be provided with a mentor teacher during their first year. Further, probationary employees will be given extra supervision and assistance in adjusting to their new positions, and particular attention will be given to a continuing evaluation of their efficiency. Probationary teachers shall annually be evaluated using the procedures developed by the School Board. The Superintendent shall consider each annual evaluation of a probationary employee in the nonrenewal process. If a teacher's annual performance evaluation during the probationary period is unsatisfactory, the School Board shall not reemploy such teacher.

Teachers who have attained continuing status in another school division in Virginia shall serve a probationary period of no less than one (1) year and not to exceed two (2) years in the School Division before attaining continuing contract status. Such probationary period shall be a part of the initial contract.

F. **Externally Funded Programs**

All persons employed on externally funded programs shall be placed on the appropriate salary schedule and step and shall be afforded all benefits according to other employees fulfilling comparable duties.

G. **PRAXIS Exam**

Use of the PRAXIS Exam shall not be resumed for teachers who currently hold a Collegiate Professional License.

H. **Financial Incentives for Excellence in Teaching**

The School Board has adopted policies designed to promote the employment and retention of the highest quality instructional personnel and to effectively serve the educational needs of students. The Superintendent shall annually develop and propose financial incentives for excellence in teaching which shall be contained in the budgets presented to the School Board ("Superintendent's Estimate of Needs") or in the School Board Compensation Plan.

<u>**Legal Reference:**</u>

Code of Virginia § 22.1-298.1, as amended. Regulations governing licensure.

Code of Virginia § 22.1-299, as amended. License required of teachers.

Code of Virginia § 22.1-253.13:1, as amended. Standard 1. Instructional programs supporting the Standards of Learning and other educational objectives.

Code of Virginia § 22.1-296.1, as amended. Data on convictions for certain crimes and child abuse and neglect required; penalty.

Code of Virginia § 22.1-303, as amended. Probationary terms of service for teachers.

Smith20190318B-000231

Code of Virginia § 19.2-389, as amended. Dissemination of criminal history record information.

Code of Virginia § 22.1-296.2, as amended. Fingerprinting required; reciprocity permitted.

Code of Virginia §22.1-296.4, as amended. Child abuse and neglect data required.

Immigration Reform and Control Act of 1986.

Board of Education Regulation Establishing Standards for Accrediting Public Schools in Virginia, 8VAC20-131 et seq., as amended.

Code of Virginia § 19.2-390.1, as amended. Sex Offender and Crimes Against Minors Registry, maintenance; access.

State of Virginia Sex Offender and Crimes Against Minors Registry: http://sex-offender.vsp.virginia.gov/SOR

Virginia Standards for Professional Practice of Teachers effective July 1, 2012.


**Editor's Note**

*Employers are required to verify that all employees hired after November 6, 1986 are U.S. citizens or aliens authorized to work.*

*See School Board **Policy 4-5** and School Board **Regulation 4-5.1** for Superintendents' duty to notify Board of arrest of an employee and employees duty to notify Superintendent of arrest.*

*See School Board **Policy 4-62** for evaluation of probationary teachers.*

*See School Board **Policy 2-48** for Salaries and Compensation.*

*See School Board **Policies 4-75** for conditions of employment for Conditions of Employment.*


Adopted by School Board: October 21, 1969
Amended by School Board: August 21, 1990
Amended by School Board: July 16, 1991
Amended by School Board: July 13, 1993 (Effective August 14, 1993)
Amended by School Board: November 3, 1998
Amended by School Board: March 21, 2000
Amended by School Board: April 1, 2003
Amended by School Board: August 20, 2013

Smith20190318B-000232

## Policies and Regulations

School Board of the City of Virginia Beach
Policy 4-2

**PERSONNEL**

**Employee Conduct**

**A. Employee Conduct**

The School Board is committed to establishing a workforce dedicated to the education of the City's youth and creating an environment conducive to productivity for the benefit of both staff and students. It is the policy of the School Board to recruit and employ highly professional employees who demonstrate the highest ethical behavior on the job and outside the workplace.

**B. Standards of Conduct and Discipline Philosophy**

All employees are expected to maintain a standard of dress, personal appearance, general decorum, and behavior that reflects positively on their status as employees of the School Board and as role models for students. Employees' use of School Board facilities, equipment, communication systems, computer systems, and resources should also reflect the same expectation. The School Board expects that staff will set examples for students that will serve students well in their own conduct and behavior and which will contribute toward an appropriate instructional atmosphere. Therefore, as a condition of employment, all employees are to perform their duties and comply with School Board Policy, School Administration Regulations, and state and federal law and regulations. Employees shall demonstrate the necessary skills, maturity, ability in dealing with others, and understanding of their job functions. Safety, courtesy and respect for diversity are expected of all employees. At no time should any employee's conduct jeopardize a student's right to be educated or an employee's right to perform job functions. To reinforce these expectations, the School Board supports continuous training and professional growth of all of its employees to develop and maintain their skills. School Board policies require a school and work environment that is respectful of the rights of all individuals in the school community and maintained in a manner adequate to meet the vision and goals of the School Board.

Employees will support the mission of the School Board by fulfilling their duties and complying with School Board policies and regulations. Inappropriate conduct both in and outside of the workplace can interfere with instruction and operations, can discredit the organization, can be offensive to others, and is nonproductive. The Superintendent will promulgate core values and standards of conduct to guide employees in meeting the School Board's expectations and will establish and promulgate to all employees disciplinary procedures and regulations necessary to implement the School Board policy.

Disciplinary action shall be consistently and fairly applied and shall be taken only for good reason, for the primary purpose of correcting unsatisfactory performance or conduct, and as a secondary purpose of exacting disciplinary measures. The severity of the disciplinary actions shall be determined by the severity of the misconduct. When appropriate, verbal warnings or counseling will first be used to



correct employee conduct. Verbal warnings or counseling are not grievable. In general, formal disciplinary actions shall be progressive in nature, ranging from a written reprimand for an initial infraction to stronger actions that may include recommendations for dismissal when corrective behavior fails to occur. However, progressive discipline is not always appropriate, and supervisors and program managers may recommend a more or less stringent action based on the severity of the violation, including dismissal, for the first offense.

**C. Conduct Outside of the Workplace**

The School Board recognizes that employees retain the right to keep their personal lives separate from their positions as School Board employees. Yet, due to the unique position that School Board employees serve in the community as role models, leaders and caretakers for the School Division's students, certain conduct is inconsistent with employment with the School Board.

Applicants who have convictions for felonies, offenses involving sexual molestation, physical or sexual abuse or rape of a child, convictions for crimes of moral turpitude[1], or founded cases of child abuse or neglect will not be eligible for employment by the School Board. Current employees who are convicted of any of the above noted crimes or have founded cases of child abuse or neglect shall be recommended for termination, and may be terminated from employment by the School Board.[2]

Other conduct that jeopardizes the School Board's or the community's trust in the employee's ability to perform his duties may be the basis for disciplinary action. Examples of such conduct include, but are not limited to: drug or alcohol abuse that becomes open and notorious; plea bargains to lesser crimes after being charged with crimes that would disqualify an employee from employment; misuse of School Board property; intentional conflicts of interests; interference of personal matters with performance of duties; and inappropriate social networking activities on Internet sites or other public mediums. In such cases the School Board reserves the right to take disciplinary action that promotes the integrity and safety of the staff and students.

**D. Employee Handbook**

Beginning July 1, 2000, each employee shall be provided an employee handbook that summarizes the School Board policies and Division regulations applicable to all employees. The handbook shall also be provided to new hires at the time of orientation. Updates to the handbook will be made available via the School Division's Intranet site.

The purpose of the handbook and updates is to inform employees about the terms and conditions of their employment. Neither the handbook nor the updates constitutes a contract or is otherwise binding on the School Board or School Division.

**E. School Board Bylaws, Policies and School Division Regulations**

The School Board's Bylaws, Policies and School Division Regulations are available to employees in the following locations: The School Division Intranet at **www.vbcps.com** and School Division Internet website at **www.vbschools.com**.

F014

Smith20190318B-000216

Copies of individual School Board Bylaws, Policies and School Division Regulations may be requested by contacting the Superintendent's Office.

*Editor's Note:*
*See School Board **Policy 5-45** - Use of Drugs, Alcohol and Tobacco Products.*
*See School Board **Regulation 5-45.1** - Possession/Use/Sale of Alcohol, Drugs or Drug Paraphernalia.*
*See Virginia Beach School Division Website at **www.vbschools.com**.*

**Legal References:**

Code of Virginia § 22.1-295, as amended. Employment of Teachers.

Code of Virginia § 22.1-296.1, as amended. Data on convictions for certain crimes and child abuse and neglect required; penalty.

Code of Virginia §22.1-296.4, as amended. Child abuse and neglect data required.

Code of Virginia §22.1-307, as amended. Dismissal of teacher; grounds.

Code of Virginia §22.1-315, as amended. Grounds and procedure for suspension.

Code of Virginia §22.1-253.13:7, as amended. Standard 7. School board policies.

Adopted by School Board: July 13, 1993 (Effective August 14, 1993)
Amended by School Board: October 21, 2003
Amended by School Board: August 16, 2005
Amended by School Board: December 7, 2010
Scrivener's Amendments: October 6, 2014
Amended by School Board: October 18, 2016

[1]Moral turpitude is defined as, but not necessarily limited to, lying, cheating, stealing, giving false statements, petit larceny, and contributing to the delinquency of a minor.

[2]Teachers may further be subject to dismissal or probation for incompetency, immorality, non compliance with school laws and regulations, disability as shown by competent medical evidence when in compliance with federal law, conviction of a felony or a crime of moral turpitude or other good and just cause. (Code of Virginia § 22.1-307, as amended. Dismissal; grounds.)

F015

Smith20190318B-000217



# VIRGINIA BEACH CITY PUBLIC SCHOOLS
## CHARTING THE COURSE

*School Board Services*

| | | |
|---|---|---|
| **Beverly M. Anderson, Chair** | | **Joel A. McDonald, Vice Chair** |
| At-Large | | District 3 – Rose Hall |
| **Daniel D. Edwards** | **Sharon R. Felton** | **Dorothy M. Holtz** |
| District 2 – Kempsville | District 6 – Beach | At-Large |
| **Victoria C. Manning** | **Ashley K. McLeod** | **Kimberly A. Melnyk** |
| At-Large | At-Large | District 7 – Princess Anne |
| **Trenace B. Riggs** | **Carolyn T. Rye** | **Carolyn D. Weems** |
| District 1 – Centerville | District 5 – Lynnhaven | District 4 - Bayside |

**Aaron C. Spence, Ed.D.**, Superintendent

August 15, 2018

**CONFIDENTIAL**

Ms. Deborah Smith
3853 Ocean Tides Dr.
Virginia Beach, VA 23455

**RE:**   Resolution of August 14, 2018

Dear Ms. Smith:

Please find attached a certified copy of a resolution adopted by the School Board of the City of Virginia Beach at their regular meeting held August 14, 2018 reflecting their decision to uphold the recommendation of the Hearing Officer for dismissal. The resolution directs the Clerk of the School Board to send you a copy.

Sincerely,

*Dianne P. Alexander*

Dianne P. Alexander
Clerk of the School Board

Attachment

ec:   John A. Mirra, Chief Human Resources Officer
       Melissa George, Principal, Kempsville High School
       Joey H. Phillips, Ph.D., Employee Relations Specialist
       Kamala H. Lannetti, Deputy City Attorney

**EXHIBIT**

8



# VIRGINIA BEACH CITY PUBLIC SCHOOLS
## CHARTING THE COURSE

*School Board Services*

| Beverly M. Anderson, Chair | | Joel A. McDonald, Vice Chair |
|---|---|---|
| At-Large | | District 3 – Rose Hall |

| Daniel D. Edwards | Sharon R. Felton | Dorothy M. Holtz |
|---|---|---|
| District 2 – Kempsville | District 6 – Beach | At-Large |
| Victoria C. Manning | Ashley K. McLeod | Kimberly A. Melnyk |
| At-Large | At-Large | District 7 – Princess Anne |
| Trenace B. Riggs | Carolyn T. Rye | Carolyn D. Weems |
| District 1 – Centerville | District 5 - Lynnhaven | District 4 - Bayside |

**Aaron C. Spence, Ed.D.**, Superintendent

### RESOLUTION REGARDING GRIEVANCE CASE NO. 520-06-08-18
### (DO NOT READ NAME) DEBORAH SMITH

**RESOLVED**: That on August 14, 2018, the School Board considered the Findings of Facts and Conclusions and Recommendations of the Hearing Officer, the transcripts of the June 26, 2018 hearing and the exhibits and, based upon such consideration, it is;

**RESOLVED**: That the School Board adopts the Findings of Facts and Conclusions and Recommendations of the Hearing Officer that the Grievant be dismissed from employment; and

**FURTHER RESOLVED**: That the Clerk is directed to send a copy of this Resolution to the Grievant, the City Attorney, the Employee Relations Specialist, the Principal of Kempsville High School, and the Chief Human Resources Officer, who is directed to place a copy of this Resolution, the Hearing Officer's Findings of Facts and Conclusions and Recommendations and exhibits in the Grievant's personnel file.

Adopted by the School Board of the City of Virginia Beach this 14th day of August 2018

*Beverly M. Anderson*

Beverly M. Anderson, School Board Chair

ATTEST:

*Dianne P. Alexander*

Dianne P. Alexander
Clerk of the Board

CERTIFIED TO BE A TRUE
AND CORRECT COPY
*Dianne P. Alexander*
Clerk, School Board of the
City of Virginia Beach

## Policies and Regulations

School Board of the City of Virginia Beach
Regulation 4-3.1

### PERSONNEL

### Grievance Procedure - Teachers

The School Board adopts employee grievance procedures that are consistent with the Code of Virginia, 1950, as amended, and applicable regulations.

### PART I - Definitions

The following words and terms, when used in these regulations, shall have the following meaning, unless the context clearly indicates otherwise:

"Business day" means any day that the relevant School Board office is open.

"Day" means calendar days unless a different meaning is clearly expressed in this regulation. Whenever the last day for performing an act required by this regulation falls on a Saturday, Sunday, or legal holiday, the act may be performed on the next day that is not a Saturday, Sunday, or legal holiday.

"Dismissal" means the dismissal of any teacher during the term of such teacher's contract.

"Grievance" means a complaint or a dispute by a teacher relating to his or her employment, including but not necessarily limited to: 1) disciplinary action including dismissal; 2) the application or interpretation of: a) personnel policies; b) procedures; c) rules and regulations; d) ordinances; and e) statutes; 3) acts of reprisal against a teacher for filing or processing a grievance, participating as a witness in any step, meeting or hearing relating to a grievance; and 4) complaints of discrimination on the basis of race, color, creed, political affiliation, handicap, age, national origin, or sex. The School Board shall have the exclusive right to manage the affairs and operations of the School Division. Accordingly, the term "grievance" shall not include a complaint or dispute by a teacher relating to: 1) the establishment and revision of wages or salaries, position classifications, or general benefits; 2) suspension of a teacher or non-renewal of the contract of a teacher who has not achieved continuing contract status; 3) the establishment or contents of ordinances, statutes, or personnel policies, procedures, rules, and regulations; 4) failure to promote; 5) discharge, layoff, or suspension from duties because of decrease in enrollment, decrease in enrollment or abolition of a particular subject, or insufficient funding; 6) hiring, transfer, assignment, and retention of teachers within the School Division; 7) suspension from duties in emergencies; 8) the methods, means, and personnel by which the School Division's operations are to be carried on; or 9) coaching or extracurricular activity sponsorship. While these management rights are reserved for the School Board, failure to apply, where applicable, these rules, regulations, policies, or procedures as written or established by the School Board is grievable.

"Personnel file" means, for the purpose of Part III, any and all memoranda, entries, or other documents included in the teacher's file as maintained in the central school administration office or in any file on the teacher maintained within a school in which the teacher serves.



"Teacher" or "teachers" means, for the purpose of Part II, all employees of the School Division involved in classroom instruction and all other full-time employees of the School Division except those employees classified as supervising employees. "Teacher" means, for the purpose of Part III, all regularly certified/licensed professional public school personnel employed under a written contract as provided by Section 22.1-302 of the Code of Virginia by the School Board as a teacher or supervisor of classroom teachers but excluding all superintendents.

"Shall file," "shall respond in writing," or "shall serve written notice" means the document is either delivered personally to the grievant or office of the proper School Board representative or is mailed by registered or certified mail, return receipt requested, and postmarked within the time limits prescribed by this procedure.

"Supervisory employee" means any person having authority in the interest of the School Board: i) to hire, transfer, suspend, layoff, recall, promote, discharge, assign, reward, or discipline other employees; and ii) to direct other employees; or iii) to adjust the grievance of other employees; or iv) to recommend any action set forth in (i), (ii), or (iii) above; provided that the authority to act as set forth in i), ii), iii), or iv) requires the exercise of independent judgment and is not merely routine and clerical in nature.

"Written grievance appeal" means a written or typed statement describing the event or action complained of or the date of the event or action, and a concise description of those policies, procedures, regulations, ordinances or statues upon which the teacher bases his or her claim. The grievant shall specify what he or she seeks through use of the grievance procedure. A statement shall be written upon forms prescribed by the Virginia Board of Education and supplied by the local School Board.

## PART II - Grievance Procedure

### Section 2.1 - Purpose of Part II of this Grievance Procedure

The purpose of Part II of this procedure is to provide an orderly procedure for resolving disputes concerning the application, interpretation, or violation of any of the provisions of local School Board policies, procedures, rules, and regulations as they affect the work of teachers, other than dismissal. An equitable solution of grievances should be secured at the most immediate administrative level. The procedure should not be construed as limiting the right of any teacher to discuss any matter of concern with any member of the school administration. Nor should the procedure be construed to restrict any teacher's right to seek, or the school administration's right to provide, review of complaints that are not included within the definition of a grievance. Nothing in this procedure shall be interpreted to limit a School Board's exclusive final authority over the management and operation of the School Division.

### Section 2.2 - Grievance Procedure

Recognizing that grievances should be begun and settled promptly, a grievance must be initiated within fifteen (15) business days following either the event giving rise to the grievance, or within fifteen (15) business days following the time when the employee knew or reasonably should have known of its occurrence. Grievances shall be processed as follows:

A.  **Step 1 - Informal**

The first step shall be an informal conference between the teacher and his or her immediate supervisor (which may be the principal). The teacher shall state the nature of the grievance, and the immediate supervisor shall attempt to adjust the grievance. It is mandatory that the teacher present the grievance informally prior to proceeding to Step 2. Teachers are not entitled to have lawyers or personal representatives present at the informal conference.

### B. Step 2 - Principal

If for any reasons the grievance is not resolved informally in Step 1 to the satisfaction of the teacher, the teacher must perfect his or her grievance by filing said grievance in writing within fifteen (15) business days following the event giving rise to the grievance, or within fifteen (15) business days following the time when the employee knew or reasonably should have known of its occurrence, specifying on the form the specific relief sought. Regardless of the outcome of Step 1, if a written grievance is not, without just cause, filed within the specified time, the grievance will be barred.

A meeting shall be held between the principal (and/or his or her designee) and the teacher (and/or his or her designee) within five (5) business days of the receipt by the principal of the written grievance. At such meeting the teacher and/or other party involved shall be entitled to present appropriate witnesses and have a representative present other than an attorney. The principal (and/or his or her designee) shall respond in writing within five (5) business days following such meeting.

A meeting shall be held between the principal (and/or his or her designee) and the teacher (and/or his or her designee) within five (5) business days of the receipt by the principal of the written grievance. At such meeting the teacher and/or other party involved shall be entitled to present appropriate witnesses and have a representative present other than an attorney. The principal (and/or his or her designee) shall respond in writing within five (5) business days following such meeting.

### C. Step 3 - Superintendent

If the grievance is not settled to the teacher's satisfaction in Step 2, the teacher can proceed to Step 3 by filing a written notice of appeal with the Superintendent, accompanied by the original grievance appeal form within five (5) business days after receipt of the Step 2 answer (or the due date of such answer). A meeting shall then be held between the Superintendent (and/or his or her designee) and the teacher (and/or his or her designee) at a mutually agreeable time within five (5) businessdays. At such meeting both the Superintendent and the teacher shall be entitled to present witnesses and to be represented by legal counsel and another representative. A representative may examine, cross-examine, question, and present evidence on behalf of a grievant or the Superintendent without violating the provisions of Section 54.1-3904 of the Code of Virginia,as amended. If no settlement can be reached in said meeting, the Superintendent (or his or her designee) shall respond in writing within five (5) business days following such meeting. The Superintendent or designee may make a written request for more specific information from the teacher, but only if such was not requested in Step 2. Such request shall be answered within ten (10) business days, and the meeting shall be held within five business days of the date on which the answer was received. If the grievance is not resolved to the satisfaction of the teacher in Step 3, the teacher may elect to have a hearing as provided in Step 4.

Smith20190318B-000220

**D.  Step 4 - Hearing Officer**

In the event the grievance is not settled upon completion of Step 3 the teacher may request that a further hearing on the grievance be held. If the teacher elects to proceed to Step 4, he or she must notify the Superintendent in writing of the intention to request a further hearing and enclose a copy of the original grievance form within ten (10) business days after receipt of a Step 3 answer (or the due date of such answer). The School Board elects to have all requests for further hearings be assigned to a hearing officer who will be appointed by the School Board as provided by law. The School Board authorizes the Superintendent or designee to maintain a list of eligible hearing officers and make all arrangements for the appointment of a hearing officer and necessary arrangements for conducting such further hearings. The School Board may choose to hear a specific grievance rather than directing the grievance to a hearing officer at its sole discretion If the School Board chooses to hear a specific grievance rather than have a hearing officer conduct the hearing, the School Board will follow the procedure set forth in 1-3 below ; however no report will be made other than the School Board's final decision.

1.  Holding of Hearing

The further hearing shall be set within fifteen (15) days of the request and the teacher shall be given at least five days' written notice of the time and place. Waiver of the time period to hold the hearing may only happen for unusual or emergency circumstances. At the hearing, the teacher may appear with or without a representative. Non-availability of legal counsel or personal representatives due to scheduling issues will not constitute unusual or emergency circumstances for the purpose of waiving the time period.

2.  Procedure for the Hearing before a Hearing Officer

a.  The hearing officer shall determine the propriety of attendance at the hearing of persons not having a direct interest in the hearing, provided that, at the request of the teacher, the hearing shall be private.

b.  The hearing officer may ask for statements from the Superintendent and the teacher clarifying the issues involved at the beginning of the hearing and at the discretion of the hearing officer may allow closing statements.

c.  The parties shall then present their claims in evidence. Witnesses may be questioned by the hearing officer, the teacher and the Superintendent, or their representatives. The hearing officer, in his discretion, may vary this procedure, but shall afford full and equal opportunity for all parties to present any material or relevant evidence and shall afford the parties the right of cross-examination.

d.  The parties shall produce such additional evidence as the hearing officer may deem necessary to an understanding and determination of the dispute. The hearing officer will be the judge of the relevancy and materiality of the evidence offered. All evidence shall be taken in the presence of the hearing officer l and of the parties.

e.  Exhibits offered by the teacher or the Superintendent may be received in evidence by the hearing officer and, when so received, shall be marked and made a part of the record.

f.  The hearing officer shall make a written recommendation to the School Board and the teacher as soon as practicable but no more than 10 business days after the close of the hearing.

g.  The hearing officer shall create a recording of the hearing and transmit the recording along with the written recommendation to the School Board. The recording may be a stenographic record or tape recording. If the grievance concerns matters other than dismissal, the recording may be dispensed with entirely by mutual consent of the parties. If the recording is not dispensed with, the two (2) parties shall share equally the cost of the recording. If either party requests a transcript, that party shall bear the expense involved in preparing it. If the grievance concerns a dismissal, the recording may not be dispensed with.

3.  Expenses

a.  The teacher shall bear his or her own expenses. The School Board shall bear the expenses of the Superintendent. The expenses of the hearing officer I shall be borne one-half by the School Board and one-half by the teacher.

b.  The Superintendent or designee is authorized to set the per diem rate of the hearing officer

c.  Witnesses who are employees of the School Board shall be granted release time if the hearing is held during the school day. The hearing shall be held at the school in which most witnesses work, if feasible.

4.  Right to Further Hearing before the School Board

Following a hearing by a hearing officer, the School Board may make its decision upon the record or recording of the hearing conducted before the hearing officer, or the School Board may elect to conduct a further hearing to receive additional evidence by giving written notice of the time and place to the teacher and the Superintendent within ten (10) business days after the School Board receives the record or recording of the initial hearing. Such notice shall specify each matter to be inquired into by the School Board. The School Board will give the teacher its written decision as soon as practicable and not more than thirty (30) days after receiving the record or recording of the hearing; however, should there be a further hearing before the School Board, such decision shall be furnished the teacher as soon as practicable and not more than thirty (30) days after such further hearing has concluded.

5.  The School Board's attorney, assistants, or representative, if he, she, or they represented a participant in the prior proceedings, the grievant, the grievant's attorney, or representative and, notwithstanding the provisions of Virginia Code § 22.1-69, as amended, the Superintendent shall be excluded from any executive session of the School Board which has as its purpose reaching a decision on a grievance. However, immediately after a decision has been

made and publicly announced, as in favor of or not in favor of the grievant, the School Board's attorney or representative and the Superintendent may join the School Board in executive session to assist in the writing of the decision.

6. The School Board shall retain its exclusive final authority over matters concerning employment and the supervision of its personnel. The School Board may alter, accept or reject any decision by the Superintendent, the School Administration or a hearing officer.

### Section 2.3 - Grievability

**A. Initial Determination of Grievability**

Decisions regarding whether a matter is grievable shall be made by the School Board at the request of the Superintendent or teacher. The School Board shall reach its decision only after allowing the Superintendent and the teacher the opportunity to present written or oral arguments regarding grievability. The decision as to whether the arguments shall be written or oral shall be in the discretion of the School Board. Decisions of the School Board shall be made within ten (10) business days of such request. Such determination of grievability shall be made subsequent to the reduction of the grievance to writing but prior to any hearing before a hearing officer or the School Board or the right to such determination shall be deemed to have been waived. Failure of the School Board to make such a determination within such a prescribed ten business-day period shall entitle the teacher to advance to the next step as if the matter were grievable. Parties are not entitled to a grievability determination regarding failure to comply with substantial grievance procedure requirements.

**B. Appeal of Determination on Grievability**

1. Decisions of the School Board regarding grievabiliy may be appealed to the Virginia Beach Circuit Court as set forth by law.

### Section 2.4 - Time Limitations

The right of any party to proceed at any step of this Part II grievance procedure shall be conditioned upon compliance with the time limitations and other requirements set forth in this procedure.

A. The failure of the teacher to comply with all substantial procedural requirements including initiation of the grievance and notice of appeal to the next step in the procedure shall eliminate the teacher's right to any further proceedings on the grievance unless just cause for such failure can be shown.

B. The failure of the School Board or any supervisory employee to comply with all substantial procedural requirements without just cause shall entitle the grievant, at his or her option, to advance to the next step in the procedure or, at the final step, to a decision in his or her favor.

C. The determination as to whether the substantial procedural requirements of Part II of this procedure s have been complied with shall be made by the School Board. In any case in which there is a factual dispute as to whether the procedural requirements have been met or just cause has been shown for failure to comply, the School Board shall have the option of allowing the grievant to proceed to the next step. The fact that the grievance is allowed

to proceed in such case shall not prevent any party from raising such failure to observe the substantial procedural requirements as an affirmative defense at any further hearing involving the grievance.

### Section 2.5 - Separability

If any portion of Part II of this procedure, or the application thereof, shall be held invalid by a court of competent jurisdiction, the remainder of this procedure and the application thereof in all other circumstances where not expressly held invalid shall not be affected thereby.

## PART III

Part III of this procedure, is to provide an orderly procedure for the expeditious resolution of disputes involving the dismissal of any teacher. Teachers may be recommended for dismissal in accordance with Code of Virginia §22.1-307, as amended. School Board Regulation 4-3.2 provides the procedure for resolving recommendations for dismissal, suspension or other disciplinary action for non-instructional and classified employees.

### Section 3.1 - Procedure for Teacher Dismissals

A. **Notice to Teacher of Recommendation for Dismissal**

1. In the event the Superintendent determines to recommend dismissal of any teacher, written notice shall be sent to the teacher on forms to be prescribed by the Virginia Board of Education notifying him or her of the proposed dismissal and informing the teacher that within ten (10) business days after receiving the notice, the teacher may request a hearing before the School Board. The School Board elects to have all requests for further hearings be assigned to a hearing officer who will be appointed by the School Board as provided by law. The School Board authorizes the Superintendent or designee to maintain a list of eligible hearing officers and make all arrangements for the appointment of a hearing officer and necessary arrangements for conducting such further hearings. At its sole discretion, the School Board may choose to hear a specific grievance rather than directing the grievance to a hearing officer.

2. During such ten (10) business day period and thereafter until a hearing is held in accordance with the provisions of this section if one is requested by the teacher, the merits of the recommendation of the Superintendent or designee shall not be considered, discussed, or acted upon by the School Board except as provided for in this section.

3. At the request of the teacher, the Superintendent or designee will provide the reasons for the recommendation in writing or, if the teacher prefers, in a personal interview. In the event that a teacher requests a hearing, the Superintendent or designee shall provide, within ten (10) days of the request, the teacher or his representative with the opportunity to inspect and copy his personnel file and all other documents relied upon in reaching the decision to recommend dismissal. Within ten (10) days of the request of the Superintendent or designee, the teacher or his representative shall provide the Superintendent or designee with the opportunity to inspect and copy the documents to be offered in rebuttal to the decision to recommend dismissal. The Superintendent or designee and the teacher or his representative shall be under a continuing duty to disclose and produce any additional documents identified later which may be used in the respective parties' cases-in-chief. The cost of copying such documents shall be paid by the requesting party.

4. Holding of Hearing

The hearing shall be held within fifteen (15) calendar days from the date of the request for a hearing. The teacher and the Superintendent each may have present at the hearing and be represented at all stages by a legal counsel and another representative.

5. Procedure for the Hearing

a. The hearing officer or the School Board (if the hearing is before the School Board) shall determine the propriety of attendance at the hearing of persons not having a direct interest in the hearing, provided that, at the request of the teacher, the hearing shall be public.

b. At the beginning of the hearing, statements from the Superintendent and the teacher (or their representatives) clarifying the issues will be allowed and, at the discretion of the hearing officer or the School Board closing statements, also may be allowed.

c. The parties shall then present their claims in evidence. Witnesses may be questioned by the hearing officer or the School Board or by the teacher and the Superintendent, or their representatives. However, the hearing officer or the School Board I may, at its discretion, vary this procedure, but shall afford full and equal opportunity to all parties for presentation of any material or relevant evidence and shall afford the parties the right of cross-examination.

d. The parties shall produce such additional evidence as the hearing officer or the School Board may deem necessary to an understanding and determination of the dispute. The hearing officer or the School Board may be the judge of the relevancy and materiality of the evidence offered. All evidence shall be taken in the presence of the hearing officer and the parties.

e. Exhibits offered by the teacher or the Superintendent may be received in evidence and, when so received, shall be marked and made a part of the record.

f. In hearings before a hearing officer, the written recommendations made by the hearing officer shall be based exclusively upon the evidence presented at the hearing.

g. The hearing may be reopened by the hearing officer at any time before the hearing officer's report is made or before the School Board has rendered a final decision. Upon its own motion, the hearing officer or the School Board, may reopen the hearing or may reopen upon application of the teacher or the Superintendent for good cause shown to hear after-discovered evidence.

h. If the recommendation for dismissal is heard before a hearing officer, the hearing officer shall make a written recommendation to the School Board, the Superintendent, and the teacher, not later than ten (10) business days after the completion of the hearing.

i.   A stenographic record or tape recording of the proceedings shall be taken. In cases of dismissal, a record or recording of the proceedings shall be made and preserved for a period of six months. If either the teacher or the School Board requests that a transcript of the record or recording be made at any time prior to expiration of the six-(6) month period, it shall be made and copies shall be furnished to both parties. The School Board shall bear the expense of the recording and the transcription.

6.   Expenses

a.   The teacher shall bear his or her own expenses. The School Board shall bear the expenses of the Superintendent. The expenses of the hearing officer shall be borne one-half by the School Board and one-half by the teacher.

b.   The School Board authorizes the Superintendent or designee to maintain a list of eligible hearing officers and make all arrangements for the appointment of a hearing officer and necessary arrangements for conducting such hearings.

7.   Decision by the School Board and Further Hearing

At its sole discretion, the School Board may choose to hear a specific grievance rather than directing the grievance to a hearing officer. If the School Board hears the grievance, the School Board will render its decision within ten (10) business days after the close of the hearing. If the hearing is held before a hearing officer, the School Board may make its decision upon the record or recording the hearing as well as the hearing officer's report or it may elect to hold a further hearing to receive additional evidence. In either circumstance, the School Board will reach its decision on the case by a majority vote of a quorum of the School Board If the School Board elects to hold a further hearing, it will give written notice to the Superintendent and the teacher within ten (10) business days after it receives the record or recording of initial hearing. Such notice shall also specify the matter to be inquired into by the School Board. In the case of a hearing before the School Board, the School Board shall give the teacher its written decision as soon as practicable but not more than thirty (30) days after the hearing. A teacher may be dismissed or suspended by a majority vote of a quorum of the School Board.

8.   The teacher and the Superintendent may be represented by legal counsel and another representative. The hearing before the School Board shall be private, unless the teacher requests a public hearing. The School Board shall establish the rules for the conduct of any hearing before it. Such rules shall include the opportunity for the teacher and the Superintendent to make opening statement and to present all material or relevant evidence and to cross-examine the witnesses. Witnesses may be questioned by the School Board.

9.   A record or recording of the proceedings shall be made and preserved for a period of six (6) months. If either the teacher or the School Board requests that a transcript of the record or recording be made at any time prior to expiration of the six-month period, it shall be made and copies shall be furnished to both parties. The School Board shall bear the expense of the recording and the transcription.

10. The School Board's attorney, assistants, or representative, if he, she, or they represented a participant in the prior proceedings, the grievant, the grievant's attorney, or representative, and notwithstanding the provisions of Virginia Code Section 22.1-69, as amended, the Superintendent shall be excluded from any executive session of the School Board which has as its purpose reaching a decision on a grievance. However, immediately after a decision has been made and publicly announced, as in favor of or not in favor of the grievant, the School Board's attorney or representative and the Superintendent may join the School Board in executive session to assist in the writing of the decision.

## Section 3.2 - Time Limitations

The right of any party to proceed at any step of the grievance procedure shall be conditioned upon compliance with the time limitations and other requirements set forth in this grievance procedure.

A. The failure of the grievant to comply with all substantial procedural requirements shall terminate the teacher's right to any further proceedings on the grievance unless just cause for such failure can be shown.

B. The failure of the School Board or of any supervisory employee to comply with all substantial procedural requirements without just cause shall entitle the grievant, at his or her option, to advance to the next step in the procedure, or, at the final step, to a decision in his or her favor.

C. The determination as to whether the substantial procedural requirements of Part III of this procedure have been complied with shall be made by the School Board. In any case in which there is a factual dispute as to whether the procedural requirements have been met or just cause has been shown for failure to comply, the School Board shall have the option of allowing the grievance to proceed to its next step. The fact that the grievance is allowed to proceed in such case shall not prevent any party from raising such failure to observe the substantial procedural requirements as an affirmative defense at any further hearing involving the grievance.

## Section 3.3 - Separability

If any portion of Part III of the procedure, or the application thereof, shall be held invalid by a court of competent jurisdiction, the remainder of this procedure and the application thereof in all other circumstances where not expressly held invalid shall not be affected thereby.

## Legal Reference:

Code of Virginia §22.1-306, as amended. Definitions.

Code of Virginia §22.1-307, as amended. Dismissal of teacher; grounds.

Code of Virginia §22.1-309, as amended. Notice to teacher or recommendation of dismissal; school board not to consider merits during notice; superintendent required to provide reasons for recommendation upon request.

Code of Virginia §22.1-311, as amended. Hearing before school board or hearing officer.

Code of Virginia §22.1-313, as amended. Decision of school board; generally.

Smith20190318B-000227

Code of Virginia §22.1-314. Decision of school board; issue of grievability; appeal.

**Effective July 1, 2013 the Code of Virginia amended the grievance procedures for teachers. The Virginia Department of Education did not amend the corresponding regulations. Accordingly, inconsistencies exist between the Code of Virginia and Procedure for Adjusting Grievances as currently set forth in 8VAC20-90 *et seq*. The procedures set forth in this Regulation will be followed until such time as the Virginia Board of Education adopts regulations consistent with the Code of Virginia. Should the Virginia Board of Education regulations become effective before this Regulation is amended, the School Board will follow the Virginia Board of Education regulations.

Approved by Superintendent: July 16, 1991
Revised by Superintendent: September 15, 1992
Approved by School Board: (See School Board Policy 4-3)
Revised by Superintendent: December 3, 2003
Revised by Superintendent: October 28, 2013
Revised by Superintendent: September 9, 2014
Revised by Superintendent: May 22, 2015

# Virginia BeachCity Public Schools

vbschools.com/about_us/our_leadership/school_board/policies_and_regulations/section_4/4-57_1

School Board of the City of Virginia Beach
Regulation 4-57.1

## PERSONNEL

Licensed Personnel: Contracts

These regulations will govern the issuance of continuing contracts.

1. Definition
   As used in this regulation, the following terms will have the following meanings:

   1. "Teacher" will mean a person: a) who is regularly employed for more than ninety (90) consecutive work days, such as a classroom teacher, visiting teacher, guidance counselor or librarian; and b) who holds a valid teaching license.
   2. "Principal" will mean a person: a) who is regularly employed full-time as a principal or assistant principal; and b) who holds a valid administrative license. The executive director or director of a school/center is considered a principal.
   3. "Coordinator or Specialist" will mean a person: a) who is regularly employed full-time in a coordinator capacity, and b) who is required to hold a license by the Board of Education in order to be employed in that position.
2. Eligibility for Continuing Contract
   1. Only persons regularly employed full-time by the School Board as Teachers, Principals, Assistant Principals, or Coordinators/Specialists will be eligible for continuing contract status.
   2. A probationary term of service of at least three consecutive years in the same school division is required prior to the issuance of a continuing contract. Based on a recommendation from the principal, the Superintendent or designee may require a probationary teacher to serve up to two additional one-year probationary years before obtaining a continuing contract. The School Board authorizes the Superintendent or designee to extend a probationary period up to five years total for an individual employee.
   3. Once a continuing contract status has been attained in a public school division in the Commonwealth, another probationary period need not be served in any other school division unless such probationary period, not to exceed two years is made part of the contract of employment. Based on a recommendation from the principal, the Superintendent or designee may extend the probationary period for an additional year before granting a continuing contract to an



1/4

individual teacher. The School Board authorizes the probationary period up to two years total for such employee.

4. A person employed as a Principal, Assistant Principal, or Coordinator/Specialist, including a person who has previously achieved continuing contract status as a Teacher, will serve three years in such position in the same school division before acquiring continuing contract status as Principal, Assistant Principal, or Coordinator/Specialist.

5. In calculating probationary terms of service for Teachers, Principals, Assistant Principals, and Coordinators/Specialists, employment for 180 or more teaching days during one school year will constitute a single year of service. In the first year of service by a teacher, 160 or more teaching days (actual days worked) will be deemed the equivalent of one year.

6. If a Teacher, Principal, Assistant Principal, or Coordinator/Specialist separates from service during his/her probationary period and does not return to service in the same public school division by the beginning of the next year following the year of separation, such person will be required to begin a new probationary period.

7. If a teacher who has attained continuing contract status in a school division in Virginia separates from service and returns to service in a public school division in Virginia by the beginning of the third year, such Teacher will be required to serve a probationary period not to exceed two years.

3. Teaching Outside Virginia Public School System Not Counted in Probationary Term
Teaching service outside of a Virginia public school system will not be counted as meeting in whole or in part the required probationary term.

4. Continuing Contracts Restricted
Continuing contracts may be executed on behalf of persons holding a valid postgraduate, collegiate professional, or a vocational license.

5. Contractual Period
A ten-month contractual period for teachers is defined to include a maximum of 200 days as follows:

1. A minimum of 180 teaching days (as required by law);

2. Ten (10) days for such activities as teaching, planning for the opening of school, evaluation, completing records and reports incident to the closing of each semester or school year, committee assignments, and conferences as are defined by the local School Board; and

3. Ten (10) days for a continuation of activities under items 1 and 2, and/or such other activities as may be assigned or approved in the discretion of the local School Board s. Items 1 and 2 specify a minimum number of days for specific purposes. Item 3 refers to 10 days subject to optional use as determined by the

local School Board.

All other continuing contract personnel will work the days identified in the School Division's published work calendar.

6. Nonrenewal of Teacher Contracts

Written notice of non-renewal of the contract must be given by the School Board on or before June 15. Exceptions to this requirement are provided in Virginia Code § 22.1-305.

Prior to non-renewal of a contract for a teacher for the ensuing school year, the following procedures will have been achieved.

1. The Principal must have kept a dated, written record of evidence of the teacher's difficulties. Complaints concerning the teacher must be shared by the Principal with the teacher within a reasonable period of time.
2. The Principal or designee must have systematically observed the teacher's program and at least one such observation must have been in the classroom, and the Principal or designee must have presented the teacher in writing:
    1. The strengths observed;
    2. The weaknesses observed; and
    3. Suggestions for improvement
3. At the discretion of the Principal or designee, a coordinator/specialist from the Department of Teaching and Learning may have been designated to observe the teacher's program, with at least one observation in the classroom. Following such observation(s), the teacher will be provided a copy of the written report given to the Principal or designee including:
    1. The strengths observed;
    2. The weaknesses observed; and
    3. Suggestions for improvement.
4. Nonrenewal Conference
    A teacher on probationary status who is recommended for nonrenewal will be entitled to conference procedures as set forth in Virginia Code § 22.1-305.

Legal Reference

Code of Virginia § 22.1-294, as amended. Probationary terms of service for principals, assistant principals and supervisors: evaluation; reassigning principal, assistant principal or supervisor to teaching position.

Code of Virginia § 22.1-299, as amended. License required of teachers.

Code of Virginia § 22.1-302, as amended. Written contracts required: execution of contracts; qualifications of temporarily employed teachers; rules and regulations.

Code of Virginia § 22.1-303, as amended. Probation terms of service for teachers.

Code of Virginia § 22.1-304, as amended. Reemployment of teacher who has not achieved continuing contract status; effect of continuing contract; resignation of teacher; reduction in number of teachers.

Code of Virginia § 22.1-305, as amended. Nonrenewal of contract of probationary teacher.

Approved by Superintendent: July 16, 1991
Revised by Superintendent: March 28, 2001
Revised by Superintendent: March 8, 2006
Revised by Superintendent: July 23, 2013